SAMANTHA WARREN

*v.*

IRA P. WARREN *et al.*

*Filed at Ottawa November 20, 1882—Rehearing denied March Term, 1883.*

1. SPECIFIC PERFORMANCE—*of agreement of a father to convey land to his daughter.* An elder daughter, after the death of her mother, at the request of her father continued to reside with him and keep house for him up to his death, a period of over thirty-eight years, and took care of and reared his infant children, managing all the household duties, and assisting him in his declining years in the management of his farm. The father had verbally promised to convey to her his farm in consideration of her services, and had frequently declared that the farm was hers, and it appeared that her services were more than equal to the value of the land, and that he died leaving her in its possession. It was *held,* that the daughter was entitled to a decree for the specific performance of her father's agreement to convey the land to her, notwithstanding the Statute of Frauds was set up and relied on to defeat her right to such relief.

2. STATUTE OF FRAUDS—*part performance, to take contract out of.* It is not indispensable, to take a verbal agreement for the conveyance of land out of the Statute of Frauds, that the consideration should be paid at the time or after the making of the contract. A past consideration, or an indebtedness of the seller to the buyer, is equally meritorious, as a consideration, as the payment of money or property at the time of or after the contract is entered into, and is as efficacious to take the case out of the Statute of Frauds.

3. SAME—*what is held possession.* Where a father agreed to convey his home farm to his daughter in consideration of her services for over thirty years after her becoming of age, and they both lived together on the farm, and the father gave her charge of the construction of a new house thereon, and she assisted largely in the management of the farm, and remained in possession thereof after his death, it was *held,* that her possession was such as to take the contract out of the Statute of Frauds.

4. SAME—*what is part performance.* Nothing is to be taken as part performance of a verbal contract for the sale of land which does not put the party in a situation which is a fraud on him unless the agreement is performed. Where the consideration of an agreement to convey land by a father to his daughter is nearly forty years of domestic service rendered for him at his request, the non-performance of the contract would work a monstrous fraud upon the daughter's rights, as the law would limit her claim for wages to five years.

5. PARENT AND CHILD—*father liable to his adult daughter for services rendered at his request.* Where an adult daughter renders services to her father at his request, in the absence of proof that the services were performed as a gratuity the law will create a liability on his part to pay for them, although no price has been agreed upon as compensation.

6. WITNESS—*objection to competency may be waived.* Although the evidence of a party to a suit is not competent, yet if no objection is made to the same on the taking of his deposition, or to the reading of his deposition, the objection thereto must be considered as waived, and its introduction can not be urged as error.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. FRANCIS GOODSPEED, Judge, presiding.

Messrs. BARBER & RANDALL, for the plaintiff in error:

Specific objection to evidence must be made in the court below, or it will be waived. · *Sargeant* v. *Kellogg,* 5 Gilm. 281; *Swift* v. *Whitney,* 20 Ill. 144; *Buntain* v. *Bailey,* 27 id. 410; *Gillespie* v. *Smith,* 29 id. 473; *Phy* v. *Clark,* 35 id. 377; *Howell* v. *Edmonds,* 47 id. 79; *Hyde* v. *Heath,* 75 id. 381; *Clevenger* v. *Dunaway,* 84 id. 370; *Merchants' Dispatch Trans. Co.* v. *Leyser,* 89 id. 46.

Objection to the competency of a witness must be made when his deposition is taken, and in the court, before the hearing. *Frink* v. *McClung,* 4 Gilm. 577; *Moshier* v. *Knox*

*College,* 32 Ill. 155; *Goodrich* v. *Pearson,* 33 id. 498; *Wilkinson* v. *Dunning,* 80 id. 344.

In equity, what is agreed to be done is considered as done. *Bishop* v. *Davenport,* 58 Ill. 105; 1 Story's Eq. Jur. sec. 64.

Where one party has executed his part of an agreement in confidence that the other will perform upon his part, it would be a fraud upon the former to suffer the refusal of the latter to his prejudice. 1 Story's Eq. Jur. secs. 659, 761, 762, 771.

Expectancy of inheritance may be surrendered by parol. *Galbraith* v. *McLain,* 84 Ill. 382; *Bishop* v. *Davenport,* 58 id. 105.

The courts will enforce family settlements. 1 Story's Eq. Jur. sec. 793.

We look upon the arrangement as one of a family nature, designed by the father as a disposition of his property without the formality of a will, by which children were paid off. *Galbraith* v. *McLain, supra; Bishop* v. *Davenport, supra.*

Messrs. FITHIAN & AVERY, for the defendants in error:

The evidence not showing complainant was actually put into possession pursuant to the gift or purchase she claims, and that she made valuable improvements on its faith, has no claim that equity can enforce. Pomeroy on Contracts, 184, sec. 130; Browne on Frauds, 467, 469.

The clearest evidence of a present gift, accompanied by exclusive possession and valuable improvements not to be compensated in damages, is necessary to establish a valid gift of land between father and son. Browne on Frauds, 474; *Bright* v. *Bright,* 41 Ill. 97; *Langston* v. *Bates,* 84 id. 524.

The possession of the child must be exclusive, and independent of the parent. *Cronk* v. *Trumble,* 66 Ill. 428.

The presumption of law is, that complainant's services were performed from love and filial duty, in the absence of

proof of a contract. *Griffin et al.* v. *First National Bank,* 74 Ill. 262; *Morton* v. *Rainey,* 82 id. 216.

Acts of part performance must take place subsequent to the contract, and be in pursuance thereof. *Wood et al.* v. *Thornby et al.* 58 Ill. 471; Browne on Frauds, 474.

An agreement whereby a party shall ultimately be bound to sell land, is within the Statute of Frauds. Browne on Frauds, 274.

Possession, to take the case out of the statute, must be taken in the lifetime of the vendor. *Cuddy* v. *Brown,* 78 Ill. 415.

Admissions of a parent that he intended to convey or give land in the future to a child, can not be enforced. *Langston* v. *Bates,* 84 Ill. 524.

The testimony of complainant was incompetent. *Alexander* v. *Hoffman,* 70 Ill. 114; *Connelly* v. *Dunn,* 73 id. 218; *Stone* v. *Cook,* 79 id. 424; *Branger* v. *Lucy,* 82 id. 91; *Marshall* v. *Peck,* 91 id. 187.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Hiram Warren settled on the farm in controversy, in Will county, in the year 1833. His wife died in 1841, leaving nine children, the youngest about one month old. Just before the wife's death she obtained a promise from her husband that he would not marry again so long as he had a daughter to keep house for him. The mother then requested plaintiff in error, who was over eighteen years of age, to stay with her father, take the babe, and rear it with the other children, with the help of her father. After his wife's death the father made the same request of plaintiff in error. She acceded to these requests, and has kept her promise strictly, by remaining with and keeping house for her father until his death, in August, 1879, he never having again married. He died intestate. Plaintiff in error thus remained with him for about thirty-eight and one-half years. She took the care

and management of the family, and aided her father in rearing the children, and as her brothers and sisters severally arrived at manhood and womanhood they married and left home, and their father gave to each land and personal property, in about the same proportions. He never gave plaintiff in error anything but her board and inexpensive clothing. She having, before her mother's death, learned the trade of a tailoress, cut and made the clothing of her father and brothers, and made, or superintended the making of, the clothes of her sisters. In this entire time she lost but three months from this unremitting service to her father, and, as long as they remained at home, to her brothers and sisters. Nor did her father ever furnish her any hired help, and he generally had one or two hired men on the farm, who were boarded in the family. Some of her sisters were weakly, or absent teaching school, and yet she heroically discharged every duty during that entire period. In addition she, for many years, was relied on by her father for advice in all things relating to the management of the farm.

It is proved that the father, in his lifetime, repeatedly said the homestead on which he first settled, and also died, was to be the property of plaintiff in error, and but a short period before his death he promised to convey it to her, so that her brothers and sisters could give her no trouble about it after his death. This seems, from the evidence, to have been his fixed purpose for many years before his death, and when building a new house on the farm he gave plaintiff in error charge of its construction, saying it would belong to her after his death. He, from conversations with neighbors, for years before that time, manifestly regarded the property in fact as belonging to her, although the title stood in his name. He said to neighbors that he would give no more to his children except Samantha, and he called the property hers, thus in the most unmistakable manner recognizing her right to, and her ownership of, the property. This evidence stands unim-

peached and uncontradicted, and must be regarded as true, and as recognizing the fact that plaintiff in error had paid for and was entitled to the farm. He, thus recognizing both his moral and legal obligation, promised to convey the property to her. He was too just a man to have deprived her of all her hopes and aspirations, and after having received the fruits of her long and weary years of toil and drudgery, extending through a lifetime, in old age to turn her on the world almost penniless, and too infirm to earn a support.

Subsequent to her father's death, plaintiff in error filed a bill for specific performance. She alleged the facts above stated, and claimed that her services had fully paid for the land, and that in consideration thereof her father had agreed to convey it to her, but had failed to perform the agreement in his lifetime. Defendants answered, and denied there was such a contract, and claimed that if there was, it was verbal, and is not binding, but is void, under the Statute of Frauds.

That plaintiff in error rendered the services at the request of deceased, when he had no legal claim to them, is clear, beyond dispute; and that these services were, without interest being allowed, almost, if not quite, equal to the full value of the land, and with interest computed from the end of each year, when the year's wages were due, the sum would largely exceed its utmost value, there can be no question. This, then, formed an ample consideration for the sale of the land, and this consideration had, every dollar of it, been received when the deceased expressly agreed to convey it to complainant. This was a part performance of the agreement.

It is not indispensable, to take a case out of the statute, that the consideration should be paid at the time of or after making the contract. A past consideration, or an indebtedness of the seller to the buyer, is equally meritorious, as a consideration, as the payment of money or property at the time or after the contract is entered into, and is as efficacious to take the contract out of the statute. This must be treated

as a part performance to the extent the purchase money was fully paid.

Nor is it an answer to say that complainant intended to render these services as a gratuity. There is no evidence that she ever said she would or had. The services were rendered at her father's request, and on that the law creates a liability on his part to pay for them. It would be to reverse legal presumptions to hold, that because she failed to haggle with her father as to the price of wages, she rendered the services as a gratuity. Defendants claim that such is the presumption, and insist complainant is sordid and grasping because she does not choose to surrender the toil and pains of a long life to advance their pecuniary interests,—and this, too, when she has spent her vigor, mental and physical, in laboring for them as a mother, and in her old age they turn upon her, and claim she is grasping and sordid because she claims the fruits of her hard and life-long earnings. The law can not and will not indulge presumptions against her so unreasonable and so unjust. Counsel for defendants in error say, complainant being the oldest daughter, we should expect her to act as she did without compensation. Why the oldest rather than the youngest daughter, or rather than the oldest or other son of the family? What rule of law or morals imposed this duty on her to toil for the interests of her brothers and sisters, more than they for her? We are aware of none.

It is claimed that plaintiff in error did not enter into possession under the purchase. She was in possession as far as the premises were capable of being possessed by her under the circumstances of the case. She and her father were on the place. He was nearly eighty-four years old at the time of his death, and could not have been very active in its management and control,—that must have devolved largely, if not wholly, on complainant. She could have had no greater possession unless she had been the sordid and unnatural

person defendants in error claim she was,—by turning her and their aged father out upon the cold charities of the world. They surely would not insist that was necessary for her to have possession. They surely would not demand so unnatural and monstrous an act, yet they insist she was not in possession under the purchase as she did not pursue that course, for she could not have obtained greater possession in any other mode. But over and above all this, after her father's death no one does or will deny that she was in the open, notorious, visible and undisputed possession. This is clear from the evidence, beyond all dispute. She was in possession after she had made full payment, and her father had agreed to convey the land to her, and this in effect, if not in terms, was a possession under the agreement of the father to convey. She and her father lived together on the farm before and after his promise to convey, and after she had paid for the land, and we must hold, under the circumstances of this case, that was all the possession required by her; but if it were not, she was in full and absolute possession after the father's death. Her father recognized her as owner, and their relations implied the possession was hers, and he lived with her. Nor is or can there be a reasonable doubt that the father agreed to convey in consideration and as compensation for her long life of toil in his service. There then was the payment of the purchase money to the fullest extent and beyond the value of the land, and there was such possession, under the circumstances of this case, as to take it out of the operation of the statute, so far as relates to payment and possession.

But it is insisted that plaintiff in error made no lasting and valuable improvements in part performance of the contract of purchase. This is not indispensable to a part performance necessary to take a case out of the operation of the statute. It is the highest evidence that can be afforded of part performance that can not be compensated in damages.

As a general rule, when compensation can be made in damages the court will not decree a specific performance, hence the court usually requires the performance of acts under the contract, which, if not carried out, could not be compensated in damages. It is therefore held that payment of a part of the purchase money, only, will not take a case out of the statute, because it can be recovered back, with interest. But this is not a sufficient ground where the seller becomes insolvent before the money is recovered back. The true ground, says Judge Story, in his work on Equitable Jurisprudence, vol. 2, sec. 761, is, "that nothing is to be considered as a part performance which does not put a party in a situation which is a fraud upon him, unless the agreement be fully performed." Tested by this rule, if this contract is not fully performed it will operate as a monstrous fraud upon plaintiff in error. Her father agreed to convey this land to her, as all must agree, for the purpose of cancelling his indebtedness to her, and she was thereby lulled into inaction, and was induced to forbear from procuring evidence of his indebtedness to her, or procuring security for its payment. We are not at liberty to presume he was so unjust, not to say dishonest, as to have refused to pay or secure her this indebtedness, or that he was so far lost to all sense of honor or justice as to have set up the bar of the statute to her claim had she insisted upon a settlement and a recognition of her claim. Defendants in error surely will not insist their father would have been guilty of such injustice and fraud to any one, much less to a daughter who had 'stood by and shielded him in his declining years, and cheered and comforted him in his trials and troubles to the last, when they had deserted him in the pursuit of their personal gains and schemes of aggrandizement. If this contract is not enforced, it must necessarily operate as a great and irreparable fraud on plaintiff in error. It will drive her to her action at law, and enable defendants in error to insist that the administrator

shall interpose the bar of the Statute of Limitations, and thus cut off more than seven-eighths of her claim, and leave her to recover no more than for the last five years of her father's life. Thus · it is seen she must suffer a monstrous fraud and injustice unless the agréement to convey the land to her is carried into full effect. This brings the case within the reason of the rule laid down by Judge Story, and entitles her to the relief sought.

It is insisted that the testimony of plaintiff in error should not be considered, as it is incompetent, under the statute. We have turned to the record, and after a careful search are unable to find that any motion was made to suppress her deposition, or any portion of it. There are no exceptions to questions or answers. Nor do we even find that any objection was raised when the deposition was read, even if that would have been sufficient. A party can not lie by without objecting to the reading of a deposition, and then, after it is read, say the witness or the evidence is incompetent. Even where such legal objections exist, and they are not urged before the deposition is read in evidence, the objections must be considered as waived, and can not be raised for the first time in this court. The transcript of the record is · badly arranged, and we have found difficulty in examining it to find evidence referred to, and on turning, in numerous instances, to the pages referred to, we find nothing to verify the reference made, and owing to its great size search for such evidence, if it exists, is impracticable. If such objections were urged in the court below, they are not referred to in the abstract or the briefs of counsel on either side. The evidence of plaintiff in error is strongly corroborated by other witnesses.

The decree will be reversed and the cause remanded.

*Decree reversed.*