## ANDREW KILLPATRICK, ADMINISTRATOR,
### V.
## THOMAS HELSTON.

*Administration—Father and Son—Recovery by Former for Services.*

In a proceeding by a father to recover against his son's estate the value of services rendered by him as a clerk, it is *held:* That the evidence sustains the finding and the judgment for the plaintiff; that a mutual understanding between the two was tantamount to an agreement; and that it was proper for the claimant to increase his demand in the Circuit Court, if he thought he had before under-estimated the value of his services.

[Opinion filed June 14, 1887.]

IN ERROR to the Circuit Court of Montgomery County; the Hon. J. J. PHILLIPS, Judge, presiding.

Mr. J. M. TRUITT, for plaintiff in error.

Messrs. LANE & COOPER, for defendant in error.

PLEASANTS, J. Joseph Helston was long a hardware merchant at Hillsboro, where he died in February, 1885, intestate.

In May following, his father, the defendant in error, filed a claim against the estate for services as clerk for ten and a half years at $25 per month and board, on which the County Court allowed $2,000. In the Circuit Court, on appeal, he amended the account, substituting $35 for $25, and the trial there, without a jury, resulted in a finding and judgment in his favor for $1,800 and costs, to be paid in due course of administration.

It is not denied that he performed the services stated, from 1874 until the death of the intestate, and that he came for that purpose, at his express request, from Duquoin, where he was then residing and working at his trade. He waited on customers, kept the books, attended to collections, had charge

of his bank account, depositing, checking out and buying exchange as was required in the business, and did the marketing for the family. The evidence tends to show that he was faithful and industrious, an exceptionally good and useful clerk. Witnesses on the one side estimate the value of his services at $40 to $50 per month, and on the other at $25 to $35, or from $8 to $12 in addition to board and clothing. Deceased himself declared he could not dispense with him without employing another man in his place, at not less than $50 per month, and that he preferred him to any other because he was his father and he could trust him.

When he entered upon this service, claimant was living with his second wife, step-mother of deceased, who was an invalid and died in the fall of 1879. He occupied with her, until her death, and afterward until the fall of 1883, an addition made by deceased to his dwelling house for their accommodation, and lived with his family. and afterward, by request or direction of deceased, boarded at the hotel, paying therefor out of money from the store. Except the board and clothing thus furnished and the little spending money he wanted from time to time, he had received no compensation for his services. No account of the amount or value of what he so received was kept or shown, beyond the estimate of witnesses referred to, of the value of his services with and without board and clothing. As appears from repeated declarations of claimant and deceased, it was mutually expected that this arrangement would be continued during the life of the former, but there was no formal agreement between them.

We incline to the opinion that these circumstances tend to show that the relation between them was that of employer and employe, and imply a promise to pay wages notwithstanding such relation was modified, as it necessarily is in all such cases, by that of parent and child. This inevitable modifying effect upon the conduct of the parties always obscures to some extent the question of the relation of master and servant, in the absence of an express contract, and we freely admit it here. But this case differs from the mass of those reported, in that the party claiming wages is the father and not the son,

and that he came to the service from an independent employment at another place and upon express request of the son. Ordinarily it is the child, simply continuing to live with and work for the parent after arriving at majority, without any express request for the service or arrangement for compensation. In such cases clearer proof and more significant circumstances are required to raise an implication of liability. Those referred to as existing here are of themselves sufficient to create the presumption and shift the burden of proof. Wood on Master and Servant, Sec. 75, p. 179 *et seq.* and notes; Schwarz v. Schwarz, 26 Ill. 81 ; Warren v. Warren, 105 Ill. 568.

Another noticeable feature here is the clear understanding, on both sides, that the party's services were to be compensated by this provision for his support during his life. A mutual understanding is tantamount to an agreement. If it could be performed in this case it is quite probable, from the evidence, that he would have claimed nothing more. But it failed without his fault, and that fact, though the son also was without fault in respect to it, would seem to bring it within the principle stated in Wood, *supra*, on pp. 128–9 and notes, which allows recovery upon a *quantum meruit.* See, also, as bearing upon both points, Freeman v. Freeman, 65 Ill. 106.

We see nothing important in the point of law or fact raised upon the amendment of the account. If claimant thought he had under-estimated his services, he was not thereby estopped to claim whatever he may have afterward come to believe was their reasonable value. In the absence of an express contract it was matter of opinion. The question of provision for claimant's wife is eliminated by her death more than five years before this claim was filed. Under the statute pleaded he recovers nothing for services rendered during her life. On the whole, we can not say the finding was unsupported by the evidence, and the judgment will be affirmed.

*Judgment affirmed.*