HUNTER C. WHITE *vs.* LYDIA F. ALMY, Admx.

MARCH 9, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Probate Law. Filing Claims Against Estate. Actions. Quantum Meruit.*
Gen. Laws, 1909, cap. 314, § 3, providing for the filing of claims against decedents in the probate court, does not require the setting forth of the evidence to support the claim, but it is sufficient to state such sum as claimant expects to recover.

The fact that a claim filed in a probate court against the estate of a decedent, states a definite sum as due, does not prevent recovery upon a quantum meruit.

(2) *Contracts. Domestic Relations. Board.*
In an action brought by a son-in-law to recover for the board of his wife's mother, deceased, the doctrine established in this state as to contracts for services between members of a family, considered; and, *held,* there being evidence of circumstances and statements from which the jury might infer that there was a reasonable and proper expectation on the part of both parties, that compensation was to be made, the case was properly submitted to the jury upon that point as well as upon the reasonableness of the amount claimed for board under all the circumstances.

*(3) Evidence.*

In an action to recover for board of defendant's intestate, defendant offered evidence as to money received by plaintiff from intestate. This was not offered to show payments on account but to show the relationship of the parties and the matter was also the subject of another suit between the parties to recover the money.

*Held,* properly excluded.

*(4) Contracts. Evidence. Domestic Relations.*

In an action between members of a family to recover for board, request to charge that the contract to pay board, not to be enforced until after death, when claimed to have been made by an aged and infirm person must be established by the strongest evidence, was properly refused, and charge that it might be established by a preponderance of the evidence was applicable to the case.

*(5) Contracts. Evidence. Domestic Relations.*

Charge approved, that the statement "you will get your pay when I am gone" of itself is not enough to overcome the presumption that services rendered by a son-in-law to his mother-in-law were rendered through affection, but might be taken into consideration with the evidence, by the jury, in determining whether plaintiff had any proper expectation of compensation.

*(6) Contracts. Evidence. Domestic Relations.*

Where there was evidence if believed by the jury, that intestate intended and promised plaintiff that he should be paid after her death for services rendered it was unnecessary for plaintiff to notify intestate of his intention to charge her for such services, and request to so charge was properly refused.

ASSUMPSIT. Heard on exceptions of defendant, and overruled.

PARKHURST, J. This is an action on the case to recover the amount of the plaintiff's claim for the board of Lydia Kelton, the defendant's intestate, and certain sums of money paid by the plaintiff for said intestate. The following is a copy of the claim filed in the probate court of Burrillville.

"BURRILLVILLE, R. I. Dec. 20, 1909.

Estate of Lydia Kelton

To Hunter C. White,        Dr.

To board of Lydia Kelton from March 16, 1903
  to September 7, 1908, 286 weeks, @ $5.00
  per week............................... $1,430 00

To board of Lydia Kelton from September 7,
    1908 to May 17, 1909, 36 weeks @ $7.50 per
    week...................................  270 00
To payment of Dr. Bruce, medical attendance..  4 00
To payment for nursing....................  17 00
To payment for minister attending funeral....  10 00

                          $1,731 00"

This claim having been disallowed by the administratrix, this suit was duly prosecuted thereon, within the time prescribed by law.

The defendant pleaded the general issue and the statute of limitations; there was no evidence offered in support of the latter plea; the case was tried upon the plea of the general issue, in the Superior Court, before a jury on the second and third days of February, 1911; the plaintiff recovered a verdict for $1,224.19.

Within seven days after the rendition of said verdict, the defendant made a motion for a new trial on the following grounds: "1. That said verdict is against the law. 2. That said verdict is against the evidence. 3. That said verdict is grossly excessive. 4. That said verdict is against the weight of the evidence. 5. Because of evidence newly discovered since the trial of said case."

After the denial of said motion for a new trial, the defendant filed a bill of exceptions which, after amendment, was allowed in part; and the case is now before this court upon said bill of exceptions as allowed.

It appears in evidence that Lydia Kelton was the mother of Mrs. White, the plaintiff's wife, and was also the mother of Mrs. Almy, the defendant administratrix, and of one son, Nahum A. Kelton; that Lydia Kelton, being a widow since 1889, had at times lived with Mrs. White and at times with Mrs. Almy, and at other times (in the summer) in a house at Riverside, R. I.; that in the summer of 1902, she was visiting her daughter, Mrs. White, at her home on the farm in Burrill-

ville, and while there fell and injured her hip, whereby she became partly disabled and was unable to walk thereafter without the use of a crutch. In the fall of 1902, upon the approach of cold weather, it became necessary for Mrs. Kelton to have an abode other than at said farm, because the house was not properly heated for cold weather, and could not be made suitably comfortable for the care of Mrs. Kelton; that Mr. and Mrs. White did not live at the farm in the winter of 1902–1903, they were taking their meals out, and had no room for Mrs. Kelton where they lived in the city. In view of these conditions, application was made to Mrs. Almy to allow Mrs. Kelton to live with her, but, as testified by Mr. Almy, it was impossible for them to have Mrs. Kelton at his house, partly on account of the ill-health of his wife and partly because they had no coal to heat their house, the winter of 1902–1903 being the winter of the coal strike. Her son, Nahum A. Kelton and his wife lived in a tenement of small rooms heated by stoves, and arrangement was finally made for Mrs. Kelton to go there, where she stayed until they were unable to keep her there any longer. During her stay at her son's house, Mrs. Kelton frequently requested Mrs. White to take her to the farm at Burrillville, and Mrs. White assured her that she would do so just as soon as it was warm enough to be safe to take her up there. Mrs. White communicated her mother's request to the plaintiff, who consented that his mother-in-law should come to his house to live; and finally, on March 16, 1903, in accordance with her own desire and request Mrs. Kelton went to the house of her daughter and son-in-law to live, and remained there till her death, May 17, 1909. It further appeared in evidence that during all this time Mrs. Kelton was well treated and cared for, had her meals with the family or in her own room when necessary, was furnished with the best of food and with such things as she asked for other than such as were provided for the family; that she was pleased with what she received and repeatedly said to the plaintiff, in the presence of others, "You are going to get paid for all these

nice things you are doing for me after I am gone," or words to that effect, as testified to by several witnesses, one being her daughter, Mrs. White, one her grandson, the present plaintiff, and one a Mrs. Palmer, who visited at the Whites' house frequently and for considerable periods from 1906 to 1909. It also appears that in March, 1907, when an addition was built to the house, a balcony on the second floor conveniently accessible to Mrs. Kelton's room was glazed to make a sun-parlor for Mrs. Kelton's use and a steam radiator placed therein to warm the same when necessary, and that she constantly used the sun-parlor thereafter as long as she was able.

It is to be noted that the claim made by the plaintiff upon which suit is brought, is simply for board. No claim is made for special care or nursing, on the part of the plaintiff or his wife, or for money expended for luxuries or for special steam heat or otherwise (except for the three final items of the claim which are not disputed). And the only proper bearing of such testimony on behalf of the plaintiff, as relates to such special care or nursing or expenditure, is such as it may have in the minds of the jury in determining whether the amount claimed for board in view of all the testimony as to the kind and quality of board furnished was reasonable, and whether under all such circumstances as are shown to have contributed so much to the comfort, welfare and happiness of Mrs. Kelton during her last years, it was reasonable to believe that in expressing her gratitude and satisfaction, she understood and intended that she or her estate should pay a reasonable sum for what her son-in-law was doing for her. That he expected her to pay such reasonable sum can now be inferred only from her expressions above quoted and from the fact that he duly filed his claim and brought his suit thereon; since, owing to his death before the case was tried, his testimony became unavailable. Mr. Almy testifies that about two weeks after Mrs. Kelton died the plaintiff told him he had no claim; and further testifies that Mr. White did not file his claim until after a contest in the probate court, as to whether

Mrs. White or Mrs. Almy should be appointed administratrix, which resulted in the appointment of Mrs. Almy, the defendant. And thereupon the defendant argues that there is evidence to show that Mr. White did not, during the lifetime of Mrs. Kelton, have any reasonable expectation of being compensated, or any intention of making any such claim; and that the making thereof was an after-thought.

The defendant contends that under the evidence the court below erred in refusing to direct a verdict for the defendant (exception 29), and having so refused, that it erred in denying the motion for a new trial (exceptions 1–7) because there was no evidence upon which the case should have been submitted to the jury, or upon which the verdict of the jury can be supported. In support of these exceptions the defendant (1) argues that "The claim as filed in the office of the clerk of the Probate Court of Burrillville does not show a subsisting liability in favor of the claimant and against the decedent; but when taken in connection with the relationship of the claimant and decedent showed on its face that no liability existed. It is based so far as appears on its face, upon the implied promise the law infers from the rendition of valuable services by one person for another, and as between strangers would have shown a subsisting liability; but no such liability is implied between parent and child." . . .

"The presumption being that such services are gratuitous there should have been set out in the claim filed either an express promise to pay for such services or circumstances affording ground for a reasonable expectation on the part of the plaintiff that compensation was to be made.

" 'It is the claim as presented which goes before the commissioners or the court. No provision is made for the determination of any question not embraced in the claim as originally presented.' *Anderson* v. *Williams*, 26 R. I. at page 67.

"The claim as filed in the Probate Court sets out a claim for board for a definite number of weeks at a definite sum per week, amounting to a definite sum and contains no statement

that any other claim would be made. The plaintiff when a bill of particulars was demanded filed as such bill a certified copy of the claim filed in the Probate Court. The declaration contains no count for so much as such services are reasonably worth, but apparently relies upon a promise expressed or implied to pay the claim as presented.

"It is respectfully submitted that there is no evidence to support such promise."

We are unable to agree with these contentions. To do so would be to hold, that when a claimant, under our statutes, files his claim against the estate of a deceased person, he must set forth the nature of the evidence upon which he expects to support such claim. The statute (Gen. Laws, 1909, cap. 314, sec. 3), simply provides that claimants "shall file statements of their claims in the office of the clerk of the probate court." The nature of the evidence upon which the claimant may attempt to support his claim is properly left to be revealed in case of a contest at the time of the trial. There is nothing upon the face of this claim to show that there was any family relationship between the claimant and the deceased, or that there arises any such presumption, as claimed, that the services, being rendered as between parent and child, were gratuitous. The claim as filed is equally consistent with a recovery, either upon a contract express both as to the obligation to pay and as to the precise amount to be paid, or upon an express contract or understanding that payment of a reasonable amount should be made, or upon a contract to be implied in law from the nature of the services rendered and of the circumstances under which they were rendered. The claim simply sets forth and should set forth such definite sum as the claimant hopes and expects to recover. As was said by this court in *Anderson* v. *Williams*, 26 R. I. 64, at p. 66: "While we should hesitate to apply the bar of the statute to a claim which had been substantially made, though lacking in technical exactness of statement, or to a claim which omitted to state unliquidated damages, yet we cannot concede the right of a creditor who

has stated a claim for a definite sum of money, for services rendered in a definite period of time, to sue for other services rendered outside of that period or for an amount of money greater than that originally claimed.

"A reasonable time is given to creditors to present their claims, but when that period has expired the executor has the right to regard the claims which are filed as constituting the maximum indebtedness of the estate and to deal with it accordingly. He is required within thirty days after the expiration of the time for filing claims to file his statement allowing or denying the validity of these same claims—Pub. Laws, cap. 864—and if commissioners are appointed or suit is brought, it is the claim presented which goes before the commissioners or the court.

"No provision is made for the determination of any question not embraced in the claim as originally presented. If one creditor may increase his claim, so may all; and an executor who has funds sufficient to pay the claims as originally filed may be seriously embarrassed from beginning to settle the estate as solvent and finding later that it is insolvent.

"The object of the statute is to facilitate the settlement of the estates of deceased persons and to make all the prescribed steps towards the distribution of the estate conclusive when they have once been taken."

It is nowhere intimated in this opinion that the claimant cannot recover anything unless he proves himself to be entitled to the exact sums of money set forth in his claim, nor is it in any way suggested that he must set forth the evidence upon which he expects to recover, otherwise than as the nature of such evidence may be inferred from such statement of the claim, as would make the same definite and intelligible. The point of the decision is that the claimant cannot recover more than he has claimed, or for a claim of a different character from the claim as presented to the probate court.

As this court said in the recent case of *Hobin* v. *Hobin*, 33 R. I. 249, at page 266: "Appellants contend very earn-

estly that appellee must prove an 'express contract.' That is true in the sense that she must prove a promise to pay, but not true in the sense evidently insisted upon that she must prove a promise to pay certain sums at certain times for certain services. The only obstacle peculiar to such a case is, that the law does not imply a promise by a parent to pay for his child's work. The child must prove a promise to pay.

" 'Thus where an adult child resides with and performs valuable service for the parent an understanding may be shown between them of recompense either in money or by way of testamentary provision under the parent's will. In meritorious instances, and particularly when the parent was long sick and infirm, and the child or some particular child performed indispensable functions, or where by personal labor or skill the child enhanced the value of the parental estate, a mutual intention to this effect may be inferred from the circumstances and where from some consistent cause no such testamentary provision has been made compensation will be allowed, out of the deceased parent's estate upon the usual footing of a creditor's claim.' " Schouler Dom. Rel. sec. 274, p. 442.

(2)      " 'When the relation of parent and child exists the law will not readily assume that of debtor and creditor likewise; and board and services may constitute a fair, mutual offset in the general household. But this presumption may be overthrown, and the reverse established, by proof of an express or implied contract to that effect; an implied contract being proven by facts and circumstances which show that both parties, at the time when the services were performed, contemplated or intended pecuniary recompense.' Schouler, sec. 269, p. 432.

"In *Fuller* v. *Mowry*, 18 R. I. 424, the court says (p. 426): 'The defendant argues that though the law implies a promise to pay for services rendered and voluntarily accepted, yet when the services are rendered by members of a family living together in one household to each other, no such

implication arises; for the reason that where the household family relation exists, reciprocal acts of kindness which tend to promote the comfort and convenience of the members of the household are presumed to have been rendered disinterestedly, from mere affection or good will; and, hence, that a plaintiff who sues for such services, to recover, must show affirmatively an express promise of remuneration. Doubtless this argument is sound, so far as it goes, but the principle contended for is subject to the further qualification that if the circumstances in which the services are rendered are such as to show a reasonable and proper expectation that compensation is to be made, the plaintiff will be entitled to recover.'

"In *Newell* v. *Lawton*, 20 R. I. 307, 308, the court in sustaining a nonsuit, say: 'The evidence shows no express agreement on the part of testatrix to pay for these benefits, nor circumstances affording ground for a reasonable expectation on the part of plaintiff that compensation was to be made.'

"In *Brown* v. *Cummings*, 27 R. I. 369, the plaintiff had not lived with deceased before the services, but the court say, p. 370, 'If she was a member of his family at that time, then the circumstances in which the services were rendered should have been submitted to the consideration of the jury for their determination as to whether they do or not show a reasonable and proper expectation that compensation was to be made.'"

See, also, in support of the same general doctrine,—2 Page, Contracts, p. 1192 and note 16: *Murrell* v. *Studstill*, 104 Ga. 604; *Neish* v. *Gannon*, 198 Ill. 219; *Warren* v. *Warren*, 105 Ill. 568; *Morton* v. *Rainey*, 82 Ill. 215; *Jones* v. *Adams*, 81 Ill. App. 183; *Collins* v. *Williams*, 21 Ind. App. 227; *Ridler* v. *Ridler*, 103 Ia. 470; *Gorrell* v. *Taylor*, 107 Tenn. 568; *Westcott* v. *Westcott*, 69 Vt. 234; *Broderick* v. *Broderick*, 28 W. Va. 378; *Spencer* v. *Spencer*, 181 Mass. 471.

We are of the opinion that the case at bar falls within the principle of the cases last above cited; that there was

evidence before the jury of circumstances and statements from which the jury might infer that there was a reasonable and proper expectation, both on the part of the plaintiff and of the deceased, that compensation was to be made, and that the evidence upon that point was conflicting, as above shown, and was properly submitted to the jury; that the question of the reasonableness of the amount claimed for board under all the circumstances was also a proper question to be submitted to the jury; we are therefore of the opinion that the case was properly submitted to the jury, and that there was no error in the court's refusal to direct a verdict for the defendant; the defendant's exception 29 is accordingly overruled.

A careful consideration of all the testimony in the case also leads this court to the conclusion that there was no error in the court's denial of the motion for a new trial. In our opinion there was evidence, which was conflicting, upon the main point of controversy in the case, which was properly submitted to the jury, as above shown. We cannot say that the evidence preponderates in favor of the defendant, or that the jury were not warranted by the evidence in finding for the plaintiff, under the doctrine of our own cases, as hereinbefore set forth. "There is nothing to show that the jury were governed by any improper motives or that the judge erred in the performance of his duty," in his refusal to grant a new trial. *Wilcox* v. *R. I. Company*, 29 R. I. 292, 296. The exception which relates to the claim that the amount awarded was excessive (No. 3) is not specially argued or pressed; but it appears that the jury awarded considerably less than the amounts set forth in the claim, viz., less than $4 per week on the average for the whole time covered, or, if interest was figured, more than $500 less than the total amount claimed. In view of all the testimony we do not find the amount awarded excessive. Exceptions 1–7, inclusive, to the refusal to grant a new trial, are overruled.

The remainder of the defendant's exceptions relate to exclusions and admissions of evidence, and refusals to charge as requested.

Exception 8, p. 20, Q. 92. The defendant excepted to the ruling of the court excluding certain testimony with reference to the entertainment of guests by the plaintiff, Hunter C. White, deceased. Counsel for the defendant asked Hunter C. White, Jr., a witness for the plaintiff, in cross-examination, the following question: "Week end guests and guests to stay over night, and things of that sort?" The question was objected to after it was answered, and was ruled out; it was irrelevant and immaterial. But the substance of the inquiry was admitted without objection under later questions. The exception is frivolous and is overruled.

Exception 9, p. 28, Q. 142. The defendant excepted to the ruling of the court excluding certain testimony with reference to the accommodations furnished by the plaintiff to Lydia Kelton, the defendant's intestate, when she was stopping at the plaintiff's house many years prior to the time covered by the claim in suit. Counsel for the defendant asked Hunter C. White, Jr., in cross-examination, the following question: "When she was stopping there she had to have a special bed made up in one of the other rooms?" The question was irrelevant and immaterial and properly excluded. This exception is frivolous and is overruled.

Exception 10, pp. 47 and 48. Q. 65. In the direct examination of Carrie K. White, a witness for the plaintiff, she was asked the following question: "Prior to March, 1903, did you have any steam heat in your Burrillville house?" Answer: "No, sir, we did not. I went to my sister—I could not have mother at my brother's any longer, and we were waiting for the steam heat to be put in—It wasn't quite finished—and I asked my sister if my mother could come there." The question was not objected to; nor was any objection made until after it was answered. No motion was made to strike out the answer, or any part of it. The matter objected to may have been a reason which in-

fluenced the witness and the plaintiff to consent to her mother's coming to live with the plaintiff. The testimony was properly admitted to show the circumstances and the considerations which led up to the final arrangement. The exception is overruled.

Exception 11, p. 55, Q. 109. Counsel for the defendant, in cross-examination, asked said witness the following question: "And whenever you went to the station, you took a carriage?" Objected to and excluded. The question was irrelevant and immaterial and was properly excluded. The exception is overruled.

Exception 12, p. 60, Q. 136. Counsel for the defendant, in cross-examination, asked said witness the following question: "And from time to time did Mr. White get any of that money?" Answer: "He never received a cent—." Objected to and excluded. The answer is stricken out. A reference to question 134, page 59, shows the nature of the inquiry. Question 134 is as follows: "Do you know how much money Mrs. Kelton had when she went living with you?" The question was objected to and excluded, and no exception thereto appears in the bill of exceptions. The matter inquired of was not in proper cross-examination of any previous testimony of the witness: it was irrelevant and immaterial, and was properly excluded. The exception is overruled. (See exception 19.)

Exception 13, p. 61, Q. 140. Counsel for the defendant, in cross-examination asked said witness the following question: "Wasn't money received by Mr. White from Mrs. Kelton from time to time while Mrs. Kelton was there?" Objected to and excluded. The question was objectionable since it was not limited to the matter in suit. (See exception 19.)

Exceptions 14, 15, 16, 17 and 18 were disallowed.

Exception 19, pp. 68–71. Counsel for the defendant made the following statement to the Court: "May it please the Court, we expect to show, and the purpose of the questions asked of Mrs. White that were ruled out was to show, that

Mr. White, Hunter C. White, October 5th, 1903, received of Lydia Kelton, his wife's mother, $1,000.00; April 1st, 1904, he received $200.00; August 16th, 1905, he received $200.00; November 4th, 1905, he received $50.24; January 14th, 1907, he received $50.00, none of which has been repaid by Hunter C. White to Lydia Kelton. THE COURT: What do you mean by 'received?' MR. WATERMAN: Just what I say, that he received it. THE COURT: Received for what purpose? A man may receive money from another person and never have to repay it. It may be a gift, or it may be received by him to pay some bills, or it may be received by him to transfer it over to somebody else, or to invest for some other person. Qualify the word 'receive.' MR. WATERMAN: I desire to finish my statement. What is the last I said. (record read) MR. WATERMAN: During her lifetime, or to her representatives since her decease. All this money was received from moneys belonging to Mrs. Kelton." . . . "All this is offered for the purpose of showing the relationship." . . . "It is offered for the purpose of showing the relationship between the parties; (3) how much money Mr. White actually did receive, and to find out what it is claimed he received it for." . . . "THE COURT: All these moneys are subject to another suit brought by Lydia Kelton against Hunter C. White?' MR. ALMY: It will appear in another suit, your honor.'" . . . "MR. CHAMPLIN: There is another suit pending. MR. ALMY: I have heard it said that you cannot try one suit in the bowels of another. THE COURT: Of course you can't, and that is why I ruled out those questions. MR. ALMY: Then we take exception to it, and that is all there is to it. We are simply trying to show the relationship of the parties. It is not trying their case, it is not trying to show whether or not he owes it, but simply to show the relationship of the parties. MR. WATERMAN: I make this statement that I offer these things, what I expect to prove, or offer to prove, and take exception to their exclusion. Defendant's exception noted." . . . "THE COURT:

You do not offer to prove these things for the purpose of showing these payments were made on this claim? MR. ALMY: Not at all." The matter above quoted is self-explanatory. It was not offered to show payments, on account, to the plaintiff, Hunter C. White, deceased, by the defendant's intestate; it was not offered in set-off (no plea in set-off was filed); it was not offered, as Mr. Almy said, "to show whether or not he" (Hunter C. White) "owes it, but simply to show the relationship of the parties." Upon the basis of the offers as above set forth, if it had been admitted it would not have supported or refuted any issue in the case; and as it was undisputed that the matter offered is the subject of another suit to recover these sums of money between the same parties, now pending, it would have been manifestly improper to admit this testimony, as offered in this suit. The ruling was proper and the exception is over-ruled.

Exception 20, p. 98, Q. 9. Counsel for the defendant asked Charles D. Skinner, a witness for the defendant, the following question: "What was the balance due Lydia Kelton, May, 1909—what was the balance due her according to your account?" Objected to by Mr. Champlin. "MR. WATERMAN: To show the amount of the estate she had, as bearing upon the intent of the parties." Objected to and excluded. Charles D. Skinner was teller of the Industrial Trust Company, of Providence. Mr. Waterman stated (p. 97) that he offered to prove by him that he had paid Hunter C. White sums of money from the account of Lydia Kelton in said bank. "THE COURT: This is not offered to show payments of this account, or that he had money which he could apply to this account? MR. HARRIS: What is the purpose of this? I think we ought to know. They are spreading a lot of matter on the record here that is not material. THE COURT: There is no set-off, and it is not offered to show payment in set-off, or any payment on account of this claim, nor is it offered to show that this man had money he could have applied to this claim if he wanted

to." . . . "Mr. WATERMAN: We don't admit it is not offered for the purpose your honor suggested. It is offered for any legitimate purpose for which it is admissible. THE COURT: You want me to charge this jury that even if this woman offered to pay board, that Hunter C. White had enough money in his hands to pay this claim if he wanted to? MR. ALMY: We are not going to ask you to charge that." It is manifest that the testimony excluded and which was the subject of this exception related to the same matters involved in the pending suit referred to in the 19th exception, and was properly excluded for the same reason. This exception is overruled.

Exceptions 22, p. 107, Q. 29. Counsel for the defendant asked Herbert Almy, a witness for the defendant, the following question: "Now, Mr. Almy, did you receive any board, you or Mrs. Almy receive any board from Mrs. Kelton during the time she lived with you?" Objected to and excluded. The question was immaterial and was properly excluded; this exception is overruled.

Exception 23, p. 111, 112. Counsel for the defendant offered to prove by said witness that Hunter C. White made a statement as to what property said Lydia Kelton had. Objected to and excluded. Exception overruled for the same reason as stated under exceptions 19 and 20.

Exception 24, p. 112, Q. 56. Counsel for the defendant asked said witness the following question: "Do you know of any money that Mr. White received at any time belonging to Mrs. Kelton, at any time since she went to board with them?" Objected to and excluded. "MR. WATERMAN: I offer to show the same facts. THE COURT: If it is for the purpose of showing payment on this claim you may show it. MR. WATERMAN: No, Your Honor." Exception overruled for the same reason as stated under exceptions 19 and 20.

Exceptions 25 and 26 were disallowed.

Exception 27, p. 122. Counsel for the defendant offered "to show that there was approximately $2,500.00 in the

bank at the time of her" (Lydia Kelton's) "death, and a very few small items of no value." Objected to and excluded. Exception overruled, for the same reason as stated under exceptions 19 and 20.

Exception 28, pp. 123, 124, Q's 94, 95, 96, 97. All these questions related to matters concerning the amount of the property belonging to Mrs. Kelton found after her death,. and as to whether any bills or receipts showing the disposition of her property were found. The matters inquired about, so far as they were excluded, related to the same matters involved in the pending suit, above referred to under exception 19, and were properly excluded for the reasons. therein stated, and this exception is overruled.

Exception 29, p. 134, relating to the defendant's motion to direct a verdict has been previously disposed of and overruled; and exceptions 30 to 40, inclusive, relating to the charge of the court, or the court's refusal to charge, will be considered hereafter.

Exceptions 41–50, inclusive (51 disallowed), 52–53, relate to numerous questions asked of Mrs. White, the plaintiff's wife, in cross-examination, relating to the receipt of various sums of money by the plaintiff from Mrs. Kelton, being sums of money referred to in exceptions previously discussed and overruled, also as to the amount of property Mrs. Kelton had at her death, and also inquiring whether Mr. White had charge of the business affairs of Mrs. Kelton during the time she lived with him, or occupied fiduciary relations. towards Mrs. Kelton and her affairs generally. It appeared that all these matters were involved in the pending suit. hereinbefore referred to and the questions were properly excluded, and these exceptions are overruled.

Exception 54, p. 68, Q. 163. Counsel for the defendant,. in cross-examination, asked Mrs. White the following question: "Did you ever tell Mrs. Almy that your mother was paying board at any time?" Objected to and excluded. The question is immaterial and irrelevant, and is not properly

in cross-examination; it was properly excluded, and this exception is overruled.

Exception 54½, p. 100, Q. 6.   Counsel for the defendant, in direct examination, asked Edward H. Chesebro, a book-keeper for the Rhode Island Hospital Trust Co., the following question:   "And I will ask you whether or not your company with which you are connected paid to Hunter C. White on the 5th day of October, 1903, a thousand dollars of the account standing upon the books of the company in the name of Lydia Kelton?"   This question was in the same line of inquiry already discussed under exceptions 19 and 20, was properly excluded, and this exception is overruled.

Exceptions 55–56 relate to questions asked of the same witness in the same line of inquiry, and are overruled for the same reasons.

Exception 57, p. 116, Q. 70.   Counsel for the defendant, in direct examination, asked Herbert Almy the following question:   "Did she" (Lydia Kelton) "make any statement in regard to making any payments, or about persons being compensated or paid for what they did?"   Objected to and excluded.   A reference to the transcript, commencing at question 64, page 114, will show an attempt upon the part of the defendant to adduce testimony as to statements or admissions of her intestate, not made in the hearing of the plaintiff, but to third persons in his absence and the question last above quoted constitutes a part of said attempt; the question was rightly excluded and this exception is overruled.

Exceptions 58 and 59 relate to similar questions addressed to the same witness, and are overruled for the same reason.

Exception 60, p. 123, Q. 94.   Counsel for the defendant, in redirect examination, asked said Herbert Almy the following question:   "And was there any other property belonging to Mrs. Lydia Kelton that you found, except the items of goods that Mrs. White gave you and the money in the bank?"   Objected to and excluded.   Overruled for the same reasons as stated under exceptions 20, 23, 27, 45 and 56.

Exception 61, p. 123, Q. 95. Counsel for the defendant, in redirect examination, asked said Herbert Almy the following question: "Were there any bills or receipts for money paid out, found by you in the estate of Lydia Kelton?" Objected to and excluded. Overruled for the same reason as last exception.

Exception 62 disallowed.

Exception 63, p. 124, Q. 97. Counsel for the defendant, in redirect examination, asked said Herbert Almy the following question: "Were there any bills or receipts for moneys paid out, so far as the son of Mrs. Kelton was concerned?" Objected to and excluded. The question is irrelevant and immaterial; exception overruled.

We come now to the exception based upon the charge to the jury and the refusal to charge upon request.

Exception 30, p. 141. 1st request. Counsel for the (4) defendant requested the court to charge the jury, "That the contract to pay board, not to be enforced until after death, especially when claimed to have been made by an aged and infirm person, is properly regarded with grave suspicion by courts of justice, and should be closely scrutinized, and only allowed to stand when established by the strongest evidence." Request denied. This request purports (as claimed by defendant's attorney) to be based upon the case of *Spencer* v. *Spencer*, 26 R. I. 237, which was a bill in equity to enforce a contract for testamentary disposition; and the discussion in the case related to contracts of that description. It was quite inapplicable to the case at bar, which, as above shown, is within the principle laid down in *Fuller* v. *Mowry*, 18 R. I. 424, 426 and *Hobin* v. *Hobin*, 33 R. I. 249, 257, 262; in which latter case it was expressly held (p. 262) that "the express contract for wages" (to be paid by a grandfather to his grandchild living in his family) "could be proved by a preponderance of evidence, and not beyond a reasonable doubt." The charge upon this point was in accord with the doctrine last above quoted; the first request was rightly refused, and this exception is overruled.

Exception 31, p. 142. 2nd request. Counsel for the defendant requested the court to charge the jury, "That the vague statement, 'that you will get your pay when I am gone,' is not sufficient to overcome the presumption that the service was rendered through love and affection, when the service is rendered by a son-in-law to his mother-in-law, who was an aged and infirm person living in his family at the time such service was rendered." Request denied. (See following exception.)

Exception 32, p. 142. In denying the second request, the court said (p. 142): "In and of itself, gentlemen, it is not enough, but taken in connection with all the evidence in the case, you may take into consideration what it means and see if it throws any light upon the question of whether he had a reasonable and proper expectation of being compensated for board that he gave her. Mr. Waterman's exception noted to the modification of the Court." This instruction as modified was correct and in accord with the principles of the case last above cited. These exceptions are overruled.

Exception 33, p. 142. 3rd request. Counsel for the defendant requested the court to charge the jury, "That a recovery upon *quantum meruit* cannot be had when the claim filed in the Probate Court sets out a definite sum due." Request denied. The request was properly denied and this exception is overruled (See discussion of exceptions 1–7 and 29 *supra*).

Exception 34, p. 143. 4th request. Counsel for the defendant requested the court to charge the jury, "That there is no implied promise to pay for board when the board is furnished by a daughter or her husband to her mother while she is living in the family, even though the mother requested her daughter to take her to live with her." The court instructed the jury as follows: "I will strike out the word 'daughter.' There is no implied promise to pay for board when the board is furnished by a son-in-law to his mother-in-law while she is living in the family, even though

the mother-in-law requested the son-in-law to take her to live with him, there is no implied promise in and of itself. I will charge that way and not the way you have it here." "Mr. Waterman's exception noted to the modification of request." The modification made the request conform to the facts in the case at bar, and was properly given in connection with other portions of the charge and was favorable to the defendant. This exception is overruled.

Exception 35, p. 143. 5th request. Counsel for the defendant requested the court to charge the jury, "That if the son-in-law meant to charge his mother-in-law for board, he ought to have given her notice of his intention to do so." Request denied. On defendant's brief appears this statement: "The fifth request to charge was based upon the decision in *Mariner* v. *Collins,* 5 Harr. 290, cited in the text of Beach on the modern law of contracts, Paragraph 654 as follows: 'If the son-in-law meant to charge her therefor (board &c.) he ought to have given her notice.'" The quotation is from the charge to the jury at *nisi prius.* Counsel however neglected to quote the next and concluding sentence of the charge, viz., "But if she went to Collins' without invitation, or from other facts the jury are satisfied that such was the understanding of the parties, she would be liable for food, attendance and necessaries." We find this case in line with our own cases above cited. If it be true as testified by plaintiff's witnesses, and evidently believed by the jury, that Mrs. Kelton intended and promised the plaintiff repeatedly that he should be paid after her death, there was no reason why he should have notified her of his intention to charge for her board. (See *Hobin* v. *Hobin, supra.*) The request was properly refused; and this exception is overruled.

Exception 36, p. 144. 6th request. Counsel for the defendant requested the court to charge the jury, "That the presumption of law is that such services are rendered or prompted by affection or good will." The Court said: "I have covered the sixth." "Mr. Waterman's exception

4

noted to the refusal of the Court to charge as requested." The presumption referred to in the sixth request was entirely and properly covered in the charge, pages 136 and 139. This exception is overruled.

Exception 37, p. 144. 7th request. Counsel for the defendant requested the court to charge the jury, that "The law does not presume a promise to pay, from the request of Mrs. Kelton to come there." Request denied, Mr. Waterman's exception noted. This was plainly included in the charge given as quoted above (Ex. 34) and this exception is overruled.

Exception 38, p. 144. 8th request. Counsel for the defendant requested the court to charge the jury, "the jury should take into consideration the fact that Mrs. Kelton never paid any board to Mr. White during her lifetime." This request was substantially granted. (See exception 40.) This exception is overruled.

Exception 39, p. 145. 9th request. Counsel for the defendant requested the court to charge the jury that, " The plaintiff in this case cannot recover for Mrs. Kelton's board unless it is proven that both Mrs. Kelton and Mr. White had a reasonable expectation that board should be paid." Request modified. (See exception 40.) The charge properly covered the request. This request had been covered. See pages 139, 140 and 141. This exception is overruled.

Exception 40, p. 145. As to the 8th and 9th requests, the Court said (p. 145): "On that question, the main question as to whether there was reasonable and proper expectation that compensation was to be made, you should likewise take into consideration the fact that during her lifetime no claim was made upon her. You should likewise consider, gentlemen, all the other facts in regard to it. I think that is all that is necessary to say. You may take the case, gentlemen, bearing in mind this, that your verdict must be for the plaintiff any way at least for $31.00, and if you find she owed him for board, add that amount to the $31.00, and

figure interest from December 21st, 1909, to the present time." "Mr. Waterman's exception noted to the modification of requests as made by the court."

We are of the opinion that the charge to the jury and the special instructions given, sufficiently covered all the requests, that were properly made, and this exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the Superior Court, with direction to enter judgment upon the verdict for the plaintiff.

*Irving Champlin, James Harris,* for plaintiff.

*Lewis A. Waterman, Herbert Almy,* for defendant.