JOSEPH F. DALBY et al. Appellees, vs. HANNAH CAROLINE
MAXFIELD, Appellant.

*Opinion filed February 16, 1910—Rehearing denied April 8, 1910.*

1. SPECIFIC PERFORMANCE—*when specific performance will not
be denied.* Where an heir, in buying out the interests of his
brothers and sisters in a farm, agrees verbally with one sister to
leave the farm and his personal property to her if she will con-
vey her interest to him and live with him and assist in carrying on
the farm, a court of equity will not, after his death, deny specific
performance as being unfair to the other heirs merely because the
brother's estate, through the joint efforts of himself and complain-
ant, has greatly increased in value since the contract was made.

2. SAME—*when exclusive possession is not necessary to take
case out of the Statute of Frauds.* Where a sister, in accordance
with her brother's verbal agreement to leave a farm and his per-
sonal property to her, conveys her interest in the farm to him and
resides with him upon the farm, doing the housework and assist-
ing him in running the farm for some seventeen years, until the
brother's death, there is such possession by the sister, even though
not exclusive, as takes the case out of the operation of the Stat-
ute of Frauds.

3. EVIDENCE—*when a contract cannot be repudiated.* Where a
contract by which a sister agrees with her brother to live with
and care for him and assist him in carrying on a farm in consid-
eration of his leaving the farm and his property to her at his death
is fully carried out by the sister up to the time of the brother's
last illness, no act or word of his at that time can operate as a
repudiation of the contract without the sister's consent, and his
statements, during such illness, concerning the disposition of his
estate inconsistent with the existence of the contract are not ad-
missible to show the contract was not made.

FARMER, C. J., dissenting.

APPEAL from the Circuit Court of Macoupin county;
the Hon. ROBERT B. SHIRLEY, Judge, presiding.

BUCKINGHAM & GRAY, for appellant.

WALKER, SEARCY & WOODS, and BELL & BURTON, for
appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a decree dismissing a cross-bill for specific performance filed by Hannah Caroline Maxfield against the complainants in the original bill, which was a bill for partition filed by Joseph F. Dalby and others, as the heirs-at-law of John W. Dalby, deceased, and granting the partition as prayed for in the original bill. The only errors alleged which require consideration relate to the decree dismissing the cross-bill.

John W. Dalby was the owner, at the time of his death, of 341 acres of farm lands in Macoupin county and about $10,000 worth of personal property. He left no widow and no child or children, he never having been married. The parties to this suit are his brothers and sisters and the descendants of deceased brothers and sisters.

The cross-bill of Mrs. Maxfield alleges that in 1891 the deceased, John W. Dalby, made a parol contract with her that if she would continue to live with him and keep house for him and aid and assist him in his business during his lifetime he would leave all of his property, both real and personal, to her; that she accepted his proposition and thereafter entered upon the performance of her part of said contract; that she kept house for her brother, John W. Dalby, from the time said contract was made until his death, a period of about seventeen years; that during said time cross-complainant did all of the housework, including cooking and washing, for said John W. Dalby without the aid of anyone, and in addition to her duties in the house she milked the cows and raised chickens, worked in the garden, and sold milk, butter and eggs and applied the proceeds to the support of the family. The cross-bill also alleges that about the year 1862 cross-complainant became a widow; that she had two children,—a daughter, Lizzie Maxfield, and a son, Dr. J. C. Maxfield; that soon after her husband died she went to live with her mother, Eliza

Dalby, who was then the owner in fee and was residing upon a part of the land involved in this partition; that Mrs. Maxfield resided in the house with her mother and took care of her until her mother's death, which occurred in 1890; that after the death of Eliza Dalby a partition suit was commenced by her heirs for a partition of the real estate of which she died seized; that John W. Dalby purchased the interest of all of the heirs in the home farm except the interest of Mrs. Maxfield; that he paid in cash or his note from $500 to $1200 per share; that Mrs. Maxfield conveyed her interest to John W. Dalby without consideration, in pursuance of his promise to leave her the entire farm, together with his personal property, at his death; that John W. Dalby died in 1907, never having made any will or executed any deed vesting Mrs. Maxfield with the title to his property. The cross-bill prays for a specific performance of the alleged parol contract and that the cross-complainant be decreed to be the owner of all of the property, real and personal, which belonged to John W. Dalby at the time of his death.

The evidence shows, beyond question, that the contract was entered into between John W. Dalby and his sister, Mrs. Maxfield, as alleged in the cross-bill. There were four persons present when the contract was made: Jane S. Maxfield, (the wife of Dr. Maxfield,) Israel Asbury Dalby, a brother to the contracting parties, and the two parties who made the agreement. All of these persons are now living except John W. Dalby, and they testify positively to the making of the contract substantially as it is set out in the cross-bill. There is much evidence in the record corroborating the statements of these witnesses, such as numerous admissions made by John W. Dalby, in his lifetime, that he had agreed and promised to leave all of his property to his sister, Mrs. Maxfield. Appellees' answer to this testimony consists of attacks made upon the credibility of the witnesses. There is no evidence that is competent, to the con-

trary.  The case must be disposed of upon the assumption that the contract alleged was, in fact, made as stated in the cross-bill.

Appellees insist that it is highly inequitable to enforce the contract, and that in view of the large amount of the estate which appellant will receive, a court of equity should, in the exercise of the discretion which it possesses in cases of this character, refuse a specific performance.  In answer to this contention it must be borne in mind that at the time the contract was entered into John W. Dalby was a very poor man.  He had at that time very little property except his undivided interest in his mother's estate.  Appellant at that time had her undivided interest in her mother's estate and about $700 in cash, a claim against her mother's estate for services rendered in taking care of her mother, and also a claim against her mother's estate for a horse belonging to her which her mother had disposed of for her benefit.  We will not stop to consider either the amount or the validity of these claims.  It is enough for our purpose to point out the fact that the claims were being made and insisted upon by appellant, and that their existence constituted an obstruction to the speedy and amicable settlement of the estate, which John W. Dalby was anxious to remove.  He did not desire a compulsory partition of his mother's estate.  His plan was to acquire by private treaty the shares of all the heirs.  To carry this plan to a successful termination, the contract relation which he assumed with appellant was a step of the highest importance if not of absolute necessity.  Looking backward over the seventeen years of frugal toil, during which the joint efforts of John W. Dalby and appellant accumulated the estate in question, we heartily agree with counsel for appellant in their commendation of the business foresight of John W. Dalby which enabled him to see the wisdom of securing the active co-operation of his sister in his plans.  It was a contract of mutual advantage, both sides of which were of about equal length.  Ap-

pellant had health and strength, a will to work and patience to wait for her reward, contingent, though it was, on the success of the undertaking, all of which she freely and faithfully devoted to their mutual interests, relying on the promise of a brother in whom she had faith. John W. Dalby had business ability, industry and an ambition to succeed, which, in combination with the elements of success contributed by appellant, have builded up the estate to such proportions that appellees, all of whom are here as non-contributing claimants, say that it is inequitable to allow appellant to receive so much for so small an investment. If John W. Dalby had met with less success and his estate had only been worth $1000 or $2000, the argument now pressed upon us could not be made. If the contract was fair and equitable when made, it could not become unfair and inequitable because fortune smiled upon the parties and success has resulted from it. The logic of appellees' position is, if parties make a contract which proves to be disastrous to them it is valid, but if, perchance, the results are beneficial it will be held unfair and inequitable. Viewing the contract in the light of the circumstances existing when it was made, there is no basis for the claim that it is so one-sided and unfair that a court of equity will for that reason withhold its aid.

It is next said that the contract cannot be enforced because appellant did not take possession under it. This contract does not belong to that class wherein it is necessary to show possession taken and the making of valuable and lasting improvements in order to take the case out of the operation of the Statute of Frauds. That statute, passed to prevent frauds, cannot be resorted to for the purpose of perpetrating a fraud. Any act performed under a parol contract which would work a fraud on the party if the contract was not enforced may be sufficient to take the case out of the operation of the Statute of Frauds. The case of *Warren v. Warren,* 105 Ill. 568, is in point on this ques-

tion. There a father verbally promised his daughter if she would remain with him after her mother's death and keep house for him as long as he lived he would leave his farm to her at his death. The daughter accepted the offer and complied with its terms. She kept house for her father for thirty-eight years, took care of the infant children, managed all of the household affairs, and assisted her father, in his declining years, in managing the farm. The daughter lived on the farm with her father but did not have any possession apart from his, neither did she make improvements nor pay taxes; still this court held that she was entitled to a specific performance of the contract. The situation there was, as it is in this case, that the promisee had such possession as the terms of the contract and the situation of the parties required. Such contracts have frequently been enforced by courts of equity without proof of exclusive possession. *Martin* v. *Wright,* 13 Wend. 460; 28 Am. Dec. 468; *Patterson* v. *Patterson,* 13 Johns. 379; *Little* v. *Dawson,* 4 U. S. 111; *Wellington* v. *Apthorp,* 145 Mass. 69; *Davidson* v. *Davidson,* 13 N. J. Eq. 246; *Logan* v. *McGinnis,* 12 Pa. 27; *Fortescue* v. *Hennah,* 19 Ves. Jr. 67; *Bryson* v. *McShane,* 49 L. R. A. 527, and cases there cited.

Some importance is attached to the testimony of Harrison R. Dalby, a brother of the deceased, to the effect that John W. Dalby during his last illness made statements in regard to the disposition of his estate inconsistent with the existence of the contract with appellant. At that time the contract had been fully performed by appellant, and John W. Dalby could not, by any act or word of his, repudiate the same without the assent of the other party to the contract. But aside from this, his statements, being in their nature self-serving statements, were not admissible to prove that agreement had not been made. *Oliphant* v. *Liversidge,* 142 Ill. 160; *Oswald* v. *Nehls,* 233 id. 438.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the cross-bill and dismiss the original bill for want of equity.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE FARMER, dissenting.