EVA GLADVILLE, Appellant, *vs.* JOHN McDOLE *et al.* Appellees.—JOHN McDOLE, Appellee, *vs.* FLORA SMITH *et al.* Appellants.

*Opinion filed October 28, 1910—Rehearing denied Dec. 8, 1910.*

1. WITNESSES—*parties not competent where other parties are suing and defending as heirs.* Neither the complainant in a bill for specific performance nor her husband is a competent witness in her behalf where the defendants are defending as the heirs-at-law of the persons alleged to have made the contract; nor are they competent to testify in a partition proceeding where the complainants claim the land by inheritance, and their testimony will not be considered by the Supreme Court even though the trial court made no ruling on the question.

2. SPECIFIC PERFORMANCE—*verbal contract to convey land must be clearly proved.* A verbal contract to convey land must be proved by competent evidence and be clear, definite and unequivocal in its terms.

3. SAME—*Statute of Frauds cannot be interposed in equity to accomplish a fraud.* A court of equity will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud.

4. SAME—*when a court of equity will not listen to defense of Statute of Frauds.* Where a verbal contract has been performed, either fully or in part, by the party seeking the remedy, and the facts are such that it would be a virtual fraud to permit the defendant to interpose the Statute of Frauds, a court of equity will not listen to such defense.

5. SAME—*in equity the rights and duties of the parties are the same as though the contract were in writing.* In equity the rights and duties of the parties to a verbal contract are the same as they would be were the contract in writing and signed, and unless the one who has performed the contract in good faith can be made whole in damages he is left without an adequate remedy at law, and equity will compel the other party to do the thing which was agreed to be done.

6. SAME—*equity will grant relief to prevent fraud resulting from setting up defense of Statute of Frauds.* A court of equity may grant relief by decreeing specific performance of a verbal contract where the contract has been performed by one party in such a way that the parties cannot be placed *in statu quo* or damages awarded which would be full compensation.

7. SAME—*possession of land in lifetime of other party is not indispensable.* Where a verbal contract to convey land does not contemplate that the promisee shall have possession of the land before the death of the promisors, the fact that the promisee does not have exclusive possession of the land during the lifetime of the promisors is not, of itself, ground for allowing the defense of the Statute of Frauds to be interposed to defeat the promisee's right to specific performance.

8. SAME—*when party takes title subject to equities of promisee in verbal contract.* Where a person receives the title to land without consideration and with knowledge of the existence of a verbal contract to convey the land and of its full performance on the part of the promisee, the title so received is, in her hands and in the hands of her heirs, subject to the equities of the promisee.

9. SAME—*when equity should enforce verbal contract.* A verbal contract to convey land in consideration of the rendition of services by the promisee in remaining with and caring for the promisor should be specifically enforced in equity as against the heirs of the promisor's wife, who received the title without consideration and with full knowledge of the contract and its performance, where the services, sacrifices and deprivations of the promisee in carrying out her contract were such as could not be estimated in money damages and where it would be a fraud upon the promisee to sustain the defense of the Statute of Frauds.

FARMER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRAN, Judge, presiding.

E. J. MILLER, for appellant.

JOHN E. JENNINGS, and W. K. WHITFIELD, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John McDole, brother of Phebe Jester, deceased, and one of her heirs-at-law, filed his bill in the circuit court of Moultrie county against her nephews, nieces and grandchildren for the partition of a tract of land containing

thirty-nine acres, of which she held the legal title at the time of her death. Eva Gladville, one of the nieces, filed her bill in the same court against the other parties for the specific performance of an alleged verbal agreement with John P. Jester, deceased, when he held the legal title to the land, to which agreement Phebe Jester was also a party, by which said Eva Gladville was to have the property after their deaths in consideration of personal services rendered to them. The causes were consolidated and the evidence was taken before the master in chancery. The consolidated cause was heard by the court on such evidence and the depositions of witnesses, and the court dismissed the bill of Eva Gladville without prejudice to her right to proceed to recover compensation for her services rendered under the contract, found in favor of a mortgagee who held a mortgage for $300 on the land and who filed a cross-bill, and found in favor of the complainant, John McDole, on his bill for partition. By the decree partition was ordered, and Eva Gladville prosecuted her appeal to this court.

Eva Gladville, one of the defendants in the bill for partition and complainant in the bill for specific performance, and her husband, testified before the master, and objection was made to their testifying. On the hearing the court did not make any ruling as to their competency, and, so far as appears, considered their testimony, but they were disqualified by the fact that the other parties were prosecuting and defending as heirs-at-law of Phebe Jester. Eva Gladville and her husband were not competent witnesses and their testimony will not be considered in this court. (*Heintz* v. *Dennis,* 216 Ill. 487.) There were some other minor objections to testimony which it will not be necessary to notice in detail.

The facts shown by competent evidence are as follows: When Eva Miller (now Eva Gladville) was ten years old her mother died and her father married again. She was a niece of Phebe Jester, wife of John P. Jester, and when

she was eleven years old they took her to their home. They then had a son about two years younger than Eva, and she lived with them, working about the house and place, going to school a very little,—enough to learn to read and write,—and when she was eighteen years old the son died. John P. Jester and his wife were very religious people and were exceedingly strict with Eva. They took her to church and Sunday school but objected to her having any social pleasures or going in company with other young people. She was quite unhappy about the restrictions, especially when she was invited by neighbors, and on one occasion when she had assisted in getting up a social affair. That was in 1887, after the death of the son, and John P. Jester then proposed to her that if she would stay with them and conform to their views about going out in company and to social gatherings until she should be married, she should have all their property after they died. She agreed to the proposition, and Phebe Jester was a party to it equally with her husband. The agreement was clearly proved by disinterested witnesses about whose testimony there can be no suspicion whatever, and for the next ten years, until Eva was twenty-eight years old and was married, she conformed in every respect to the agreement. Mrs. Jester was a frail woman, in ill-health and confined to her bed frequently, and Mr. Jester was not in good health. The land was hilly clay land, with about ten acres of river bottom subject to overflow, and it was not valuable land, although it has advanced considerably in value, and the improvements were poor. Eva did the housework, with no assistance except occasional help in emergencies, milked the cows, made the garden, carried in the wood and kindling and frequently chopped the wood, worked in the field, planted corn, hoed corn, shocked wheat, drove the harrow, worked in the hay field, and filled the place of a regular hand on the farm. The doing of the housework was worth from $3.50 to $4 a week, and she had an opportunity to

work out at housework at $3.50 per week but did not do
so because of her contract. Including the outside work and
farm work her services were worth from $5 a week to $1
a day for the ten years, and it would have been practically
impossible to secure for any price one who would do the
same work and forego all social pleasures and the company
of young people. John P. Jester did not like to have Eva
have any company, and said he was afraid if she got to
going with the boys she would get married and leave them,
and they needed her help. She had some means of her
own from her mother's estate, which was probably not
very much, but she let Mr. Jester have it and he paid her
some interest, which she expended for clothes whenever she
wanted anything extra in that line. She was married in
1897. Soon after her marriage she was sent for and stayed
with the Jesters four weeks, and afterward assisted them
in sickness at frequent intervals, staying there one or two
weeks at a time. Neither Mr. Jester nor Mrs. Jester was
in good health, and after the marriage the husband of
Eva Gladville bought shingles, which he gave, and he with
others put them on the house, donating the work. There
was no objection to the marriage, but Mr. Gladville had a
habit of drinking intoxicants, and whenever he got drunk
Mr. Jester would worry and talk about fixing the land so
that Eva and her children would have it and her husband
could not "run through with it." Both Mr. and Mrs. Jes-
ter stated the contract to other people, and after children
were born to Eva they sometimes said that she and her
children were to have the land, or that they wanted her
and her children to have it, but there is not a particle of
doubt of the nature of the contract or that she was to have
the property if she performed it on her side. When the
contract was made she had no children and did not con-
template marriage, and nothing was said about children or
the possibility of children. She continued after her mar-
riage to do everything for the Jesters that she could al-

though not specified in the contract, and when they were sick and she was wanted she went to their home and stayed there, doing the work at different times without any compensation, so long as they lived. John P. Jester undoubtedly entertained the belief that he could provide that the property should go to Eva and her children, and he made a number of wills and a codicil, which were either not executed or were revoked by cutting out his signature, the general effect of which was to devise the property to his wife for her life, with remainder to Eva Gladville and her children or in trust for her children. When the codicil was written his direction was to have it so that the husband of Eva could not dispose of the land and so that it would go to her and her children, and he said that he had a contract with Eva before she was married to leave her the property and she had performed her part of the contract. On March 30, 1907, he executed a warranty deed to his wife, Phebe Jester, of the land, with provisions that he should have full control of it during his life, and if he survived his wife the land should revert to him. His wife did not join in the deed and it did not release his homestead. Ten days after making that deed he died, and a will made by him was admitted to probate by which he gave all the property to his wife for life and then to be disposed of by her in any way or manner she might see fit to dispose of it. The widow, Phebe Jester, occupied the premises something less than a year and died intestate on February 10, 1908. Phebe Jester frequently stated, both before she received the legal title and afterward, that Eva was to have the property, and a few days before her death she directed Eva to get a black bag on the big bureau and bring it to her. She then gave Eva the keys and told her to get the door key that was hanging up. Eva got the keys and put them in her pocket and kept them and after the death of Phebe Jester retained possession of the property. Eva cared for Mrs. Jester in her last illness and the relations between

them were most intimate and affectionate. There were in evidence three papers with the signature of Phebe Jester, saying that she wanted all her real and personal property to go to Eva and her children. There was some difference of opinion among the witnesses as to the handwriting, but the writings have no legal effect. There was some testimony that she said she wanted the land divided among her heirs, which has no more effect than the papers just referred to. Neither would authorize any decree as to the title, and the rights of the parties depend upon the contract and the question whether it can be enforced.

The contract was verbal, and in such a case it must be proved by competent evidence and be clear, definite and unequivocal in its terms. (*Clark* v. *Clark,* 122 Ill. 388.) The evidence fully satisfied that requirement. It was also proved, and not contradicted, that Eva Gladville fully performed the contract in accordance with its terms, and the only question to be determined is whether she is entitled to a specific performance of it although it was within the Statute of Frauds and invalid at law. The invalidity consisted of the fact that it was not reduced to writing and signed, and no action at law will lie upon such a contract. The courts of equity, however, will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud, and where a verbal contract has been performed, either fully or in part, by the party seeking the remedy, and the facts are such that it would be a virtual fraud to permit the defendant to interpose the statute, a court of equity will not listen to that defense. If the defendant has knowingly permitted the complainant to do acts in performance of the verbal agreement and in reliance upon it, which change the relation of the parties and prevent a restoration to their former condition by a recovery at law of compensation for the acts performed, it would be a fraud on the complainant to permit the defense to be made, and the stat-

ute, which is intended to prevent fraud, would be made the means of fraud. In equity the rights and duties of the parties are the same as they would have been if the contract had been written and signed, and unless the one who has performed the contract in good faith can be made whole in damages he is left without any adequate remedy at law, and equity will compel the other party to do the thing which was agreed to be done. (3 Pomeroy's Eq. Jur. sec. 1409; 26 Am. & Eng. Ency. of Law,—2d ed.—50.) Payment of purchase money, alone, will not take the contract out of the statute, for the reason that it can be recovered back, with interest, in an action at law. (*Temple* v. *Johnson,* 71 Ill. 13.) The same is true of personal services, which can be estimated in money, for which a recovery can be had in law, because the law would in that case afford a sufficient remedy. In this case there could be no recovery at law for the labor, sacrifices and deprivations of Eva Gladville during ten years of service, which were worth as much as the land was then worth, for the reason that any claim for them was outlawed by the Statute of Limitations long ago. The mere fact of possession, without other circumstances, would not justify a decree for a specific performance, and in most cases the use of the land would be a full compensation for all injuries sustained. The basis for relief in a court of equity is the equitable fraud resulting from setting up the Statute of Frauds as a defense, and there have been many cases in this court where equity has afforded a remedy by specific performance if the contract has been performed by one party in such a way that the parties cannot be placed *in statu quo* or damages awarded which would be full compensation. In contracts between parties for the conveyance of land there is usually a provision for possession under the contract at some time, and naturally one of the most frequent acts of part performance is taking possession and making improvements on the land. This court has enforced specific

performance of verbal contracts where such possession has been taken, coupled with payment of the purchase price, and especially if lasting and valuable improvements have been made. (*Ramsey* v. *Liston,* 25 Ill. 114; *Langston* v. *Bates,* 84 id. 524; *Smith* v. *West,* 103 id. 332; *McNamara* v. *Garrity,* 106 id. 384; *Irwin* v. *Dyke,* 114 id. 302; *Hall* v. *Peoria and Eastern Railway Co.* 143 id. 163.) And a contract invalid at law may be specifically enforced against the heirs of a party to such contract. *Simonton* v. *Godsey,* 174 Ill. 28.

Much of the argument against the right to a specific performance is devoted to the claim that Eva Gladville did not have possession of the land in the lifetime of John P. Jester or Phebe Jester and that there can be no decree for specific performance without such possession. The keys were delivered to her by Phebe Jester a few days before the death of Phebe Jester, and she was put in such possession of the property as was consistent with existing conditions and circumstances. But if there was no actual possession and it was merely constructive, it cannot be that equity will deny a remedy upon that ground, alone, where the result would be to accomplish a fraud. The cases where possession has been regarded as of controlling importance are cases where the purchaser became entitled to possession under the terms of the contract, but in this case Eva Gladville was not entitled to possession in the lifetime of John P. Jester or Phebe Jester but by the very terms of the contract was to have such possession after they died, and she took and has held actual possession ever since the death of Phebe Jester. To say that possession in the lifetime of the other party by one claiming under a verbal contract is indispensable to any remedy in equity, would be to say that there can be no remedy where the complainant did not become entitled to possession until the death of the other party, although such a rule would operate as an unmitigated fraud. The ground for interference by a court

of equity being that there have been such acts of perform-ance on the part of one claiming the benefit of the contract as would compel him to suffer an injury amounting to a fraud if the statute is interposed as a defense, it would be as anomalous as it would be absurd to recognize nothing as performance except taking possession of the land when a party could not lawfully take such possession. To per-mit the defendants to the bill of Eva Gladville to repudiate the contract because she did not have possession before she became entitled to it, when she has performed her contract and cannot be compensated except by an enforcement of it, would be to perpetrate a fraud equal to any other.

In *Warren* v. *Warren,* 105 Ill. 568, the court consid-ered questions of possession and improvements, and said that the plaintiff in error in that case had possession so far as the premises were capable of being possessed by her un-der the circumstances of the case, and after her father's death she was in the open, notorious, visible and undisputed possession. She had made no improvements, but it was said that this was not indispensable to a part performance necessary to take the case out of the statute. She was given relief under the rule that there had been a perform-ance of such acts under the contract that if it was not carried out they could not be compensated in damages and if the contract was not fully performed it would operate as a monstrous fraud upon her. The principle of that case was re-affirmed in *Dalby* v. *Maxfield,* 244 Ill. 214, and was re-enforced by many authorities. In neither of those cases was the complainant entitled to possession until after the death of the other party to the contract, and neither of them had or could have had possession under the contract, which would have been contrary to its terms. If this com-plainant cannot have her contract performed because she had nothing but constructive possession before the death of Mrs. Jester, the inequitable and unjust consequence would be that one can interpose the Statute of Frauds to defraud

another who was not entitled to the possession. Phebe Jester was a party to the original contract and arrangement and had all the benefit of the services of the complainant that John P. Jester had, and, indeed, much more. She received the title to the land without consideration and with knowledge of the contract and the performance on her part by Eva Gladville, and the title conveyed to her was subject to the equities of Eva Gladville and is so subject in the hands of her heirs.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the bill of John McDole and to enter a decree in accordance with the prayer of the bill of Eva Gladville, subject to the mortgage for $300 and accrued interest.

*Reversed and remanded, with directions.*

FARMER and DUNN, JJ., dissenting.