EDWARD ADKINS, Appellee, *vs.* WARD ADKINS *et al.* Appellants.

*Opinion filed October 25, 1928—Rehearing denied Dec. 11, 1928.*

Mann & Coleman, for appellants.

A. B. Dennis, for appellee.

Mr. Justice Heard delivered the opinion of the court:

William Adkins died intestate in December, 1916, seized in fee simple of the real estate over which the controversy in this case arises. He left him surviving his widow, Louise Adkins; Ward Adkins and appellee, Edward Adkins, his sons; Ella Allen, Bessie Yuergens and Allie Ashcraft, his daughters; and Adolph Adkins, Madge Sams, Alberta Adkins and Ada Adkins Miers, his ·grandchildren, the children of Perry Adkins, a deceased son. The widow, Louise Adkins, died in 1923, and Alberta Adkins died intestate in 1926 without issue, leaving as her only heirs her brothers and sisters above mentioned. On June 14, 1926, the Interstate Water Company of Danville instituted proceedings in the county court of Vermilion county against appellee and appellants to condemn the real estate in question, which resulted in a judgment of condemnation, the value of the land being fixed at $4000, from which judgment an appeal was taken to this court and the judgment was affirmed. (*Interstate Water Co.* v. *Adkins,* 327 Ill. 356.) The Interstate Water Company paid to the county treasurer of Vermilion county $4277.78 in satisfaction of the judgment and entered into possession of the premises. At the October, 1926, term of the county court of Vermilion county, while the condemnation proceedings were pending in this court, appellee filed a bill for the specific performance of an alleged oral contract between him and his father, William Adkins, which alleged that William Adkins had agreed to leave the real estate in question to appellee if he and his wife would move into the home of William Adkins and

care for him and his wife during their respective lives. The bill alleged performance of the contract on the part of appellee, and prayed for a decree requiring appellants to execute and deliver to appellee deeds of conveyance of the real estate in question, or if the judgment of the county court in the condemnation suit should be affirmed, that the proceeds of the judgment be paid to appellee. Appellants denied the making of the contract between William Adkins and appellee and set up the Statute of Frauds as a defense. Issue being joined, the cause was referred to a special master in chancery, who, after hearing the evidence, made a report recommending that a decree be entered granting to appellee the relief prayed for by him. Objections were filed to the master's report, which stood as exceptions in the circuit court, which being overruled, the master's report was confirmed and a decree entered in accordance therewith, from which decree appellants have appealed to this court.

Bessie Yuergens testified that in August, 1916, she heard a conversation between her father and appellee in which her father told appellee "that if he would come and move in with him and stay and take care of him and mother as long as he lived that he should have everything that he had," and that appellee said he would. In September, 1916, appellee and his wife moved to his father's home, where they lived together as one family until the father's death, December 28, 1916, and thereafter until his mother's death, January 23, 1923. There is testimony to the effect that appellee provided the food; that he and his wife each paid part of the funeral expenses of his father and mother and paid doctors' bills for his mother, and that while residing there appellee made some improvements on the premises and paid the taxes thereon for the years 1919 to 1925, inclusive. There is, however, no evidence in the record as to the source from which the money came with which the disbursements were made. William Adkins during his lifetime was in receipt of a pension of $17.50 per month, and

his wife drew a pension from the United States government from the time of his decease until her death. At the time of her death she had a certificate for $200, par value, in the Danville Building Association, which appellee claimed had been assigned to him by her before her death and on which he collected the money. Appellee resided on the premises in question from September, 1916, until he was compelled to give up possession, July, 1926, by order of the county court of Vermilion county in the condemnation suit brought by the Interstate Water Company, during all of which time none of the other heirs of William Adkins received any part of the rents or profits therefrom. There is no evidence in the record showing the value of the premises or the value of their use and occupation. There is no evidence as to what disposition was made of the pension money received by the mother. We take judicial notice of the laws of the United States and of the fact that if the widow received the lowest rate of pension allowable thereunder, her pension from December, 1916, to January, 1923, would amount to many times the value of the certificate in the Danville Building Association, which, so far as the evidence shows, was the only personalty belonging to either her or her husband's estate at the time of her death. The contract testified to by Bessie Yuergens between William Adkins and appellee is not clear, definite and unequivocal in its terms. It does not state whether the property is to be left to appellee by will or by deed. It does not state whether it is to be left to him for life, in trust or in fee simple.

In the pleadings filed in the condemnation suit appellee admitted ownership of the appellants, together with himself, of the land in question, and in his testimony on the trial with reference to this property the following occurred:

Q. "This property where the house is, is all that your father owned. Is that right?

A. "Yes, sir.

Q. "And that, of course, belongs to you and all those other heirs together?

A. "Yes, sir."

At another time during his testimony the following occurred:

Q. "Your brothers and sisters—some of them have an interest in this house, buildings?

A. "They claim to.

Q. "You claim they don't?

A. "It is mine, I tell you."

After the death of his mother appellee secured deeds from Bessie Yuergens and Allie Ashcraft for their interest in the property. He also attempted to get deeds from some of the other heirs, at which time he told them that their interest in the property would not amount to more than $25. At the time he attempted to get these deeds he made no claim that he was entitled to a deed by reason of the alleged contract here sought to be specifically performed.

Before a parol contract for the conveyance of real estate will be specifically enforced in a court of equity it must appear to be certain, definite and unequivocal in its terms. The proof upon which the conveyance is asked must be established so convincingly that it will leave no reasonable doubt in the mind of the court. Clearer proof is required when the alleged contract is between father and son. To take an oral promise, which has been partly performed, out of the Statute of Frauds the part performance must be such as to put the party in such situation that it would be a fraud upon him not to let the agreement be fully performed, (*Stephens* v. *Collison,* 313 Ill. 365; *Keller* v. *Joseph,* 329 id. 148;) and all acts thereunder must be referable to the contract, and it must be clear that the promisee went into possession under the contract and made valuable improvements on the property with his own means and upon the faith of the promise. The improvements must be valuable in comparison with the value of the property, and must

be something more than a tenant who expected to occupy the property for a number of years would make for his own comfort and convenience. (*Flannery* v. *Woolverton,* 329 Ill. 424.) When the evidence in this case is tested by the rules laid down in the cases above cited and the many cases cited therein, we find that it falls far short of being sufficient to entitle appellee to the relief sought by his bill.

The decree of the circuit court is therefore reversed and the cause remanded to that court, with directions to enter a decree directing that the proceeds of the condemnation suit be divided among the heirs of William Adkins according to the laws of descent of this State, giving to appellee, however, the shares of those heirs from whom he has procured deeds. *Reversed and remanded, with directions.*