(No. 25653.—

JULIA HICKEY, Appellee, *vs.* JOSEPHINE HICKEY *et al.* Appellants.

*Opinion filed October 11, 1940—Rehearing denied Dec. 10, 1940.*

Douglas R. Dewey, and Evans & Kuhle, for appellants.

LeForgee, Samuels & Miller, (Charles C. Le-Forgee, Carl R. Miller, and William M. Rice, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

As finally amended the complaint of Julia Hickey, filed in the circuit court of Macon county, asked that all the other heirs of Mary Hickey, deceased, the guardian *ad litem* of certain minor heirs, and the administrator of her estate, be compelled to specifically perform an agreement of Mary Hickey to convey and transfer to Julia all the property Mary Hickey owned on July 3, 1928. The cause was referred to a special master in chancery who found that the alleged agreement had not been proved and recommended that specific performance be denied. The chancellor sustained exceptions to his report and entered a decree as prayed. A freehold is involved and this appeal has been perfected directly to this court.

Plaintiff alleged that her sister, Mary Hickey, aged 48, died intestate on April 18, 1936, at Decatur, Illinois. Her heirs were Julia Hickey, Mary Margaret Hickey, a minor, the only daughter of Nicholas Hickey, a deceased brother, Margaret L. Hickey, Mary Beth Hickey and John T. Hickey, a minor, children of John Hickey, a deceased brother. At her death, Mary Hickey owned personal property consisting of building and loan stock, cash and grain. She owned an undivided one-fourth interest in 120 acres of improved farm land in Moultrie county, 160 acres of improved farm land in Webster county, Iowa, and an undivided one-half interest in an eight-room residence at 641 West Prairie street, in Decatur. The value of her estate was alleged to be $10,000 at the time of her death. Plaintiff alleged that prior to Mary's death the remaining undivided interests in the farm lands were owned one-fourth by herself, one-fourth by Mary Margaret Hickey, and one-fourth by the children of her deceased brother John. As amended, the complaint alleged Mary Hickey was in frail and delicate health and, about July 3, 1928, she promised, agreed and contracted with Julia that if she would take

care of Mary and do all things necessary to make a home for her in the residence then occupied by them, and would nurse and take care of Mary in her illness, in consideration of such services she would devise and bequeath to Julia all the property she then owned both real and personal, which was then worth $10,000. It was alleged plaintiff accepted and fully performed the agreement and continued to live with and care for Mary until her death. Mary Hickey died intestate and did not carry out the terms of the alleged verbal agreement. Plaintiff alleged that because of her continuous work in the service of Mary, she did not marry and denied herself the social pleasure and company of other persons. She claimed she spent her mental and physical vigor in the service of Mary; that Mary refused to go to a hospital; that in pursuance of the agreement, plaintiff nursed Mary the same as if she were in a hospital; that it was necessary at times to prepare separate meals, wash her clothes and bedding and administer to her all the services necessary to a person bedfast. She alleged that no adequate compensation can be obtained from the estate of Mary Hickey by the plaintiff except that the property described in the amended complaint, as amended, be conveyed to her pursuant to the agreement.

By their answer defendants admitted the heirship of Mary Hickey as alleged and that she owned the property as set forth in the amended complaint at the time of her death. They specifically denied the remaining allegations. They alleged that Julia Hickey was appointed administratrix of the estate of Mary Hickey about May 15, 1936, and qualified and acted as such until October 14, 1938. They said that from the death of Mary until about October 1, 1938, settlements of rent from the farm lands were made between Julia Hickey and the remaining heirs of Mary Hickey, on the assumption that Julia Hickey was entitled to one-third of the net income, that Mary Margaret Hickey was entitled to one-third, and the children of John Hickey

were entitled to the remaining one-third; that, by her conduct in the management of the estate of Mary Hickey and in thus distributing the rents and income, plaintiff had abandoned any claim she might have against the estate of Mary Hickey by reason of the agreement.

The testimony introduced before the master showed that Julia and Mary Hickey lived with their father, Thomas Hickey, at 641 West Prairie street, Decatur, until he died in March, 1925. They continued to live there until Mary died, and plaintiff now lives there alone. The three had previously resided on the farm in Moultrie county. The heirs of Thomas Hickey were his two daughters, Julia and Mary, a son, John, and Mary Margaret, the daughter of Nicholas Hickey, who predeceased his father. John Hickey died in 1935, leaving his wife, Josephine, and three children as his heirs.

The testimony shows that Mary Hickey was not strong physically. She had suffered from bronchial asthma and a weak heart for thirty years, and could not do much of the housework. Julia did her own work and kept from four to six roomers and two or three boarders. Hannah Dunn, who stayed with the Hickeys during the four months preceding Mary's death, testified that Mary had a cold or cough and kept getting weaker. She was able to be up and about but did not work. Julia did all the cooking, washing and ironing and cleaning of the house and took care of Mary. She waited on her and helped her dress. She slept with her and gave her medicine. Mary told this witness that Julia had always taken care of her and that she would not have been alive at that time, if it had not been for Julia. She told this witness that she wanted Julia to have everything she had, if anything happened to Mary. She said: "We have had that agreement. She is to have all that I have. I don't want any one else in the family to have any of my property, only Julia." She also said that Julia was to take care of her as long as she lived. Hannah Dunn

talked to Mary about making a will and produced a copy of an unexecuted will which she said her nephew had prepared for Mary.

Hannon Lee Rice, a friend of Julia and Mary, had roomed at their home from 1924 to 1928. He saw them at least once a week from 1930 to the time of Mary's death. He said that Mary's health was poor and she did no work around the house. Julia took care of her person and did general nursing duties. He had a conversation with Mary on July 3, 1928, in her living room in the presence of Julia and his father and mother who did not testify. Mary said she wanted Julia to have her property and her worldly belongings at her death, if Julia would leave her hers. They made an agreement that day to make a will and Mary said she wanted to leave what she owned to Julia. He said the agreement was that if Julia would take care of Mary until her death that she would leave her property to Julia. He also said that he had not discussed this matter with either sister after 1930. Howard Edgar Rice, a brother of Hannon Lee Rice, who had also been a roomer at the Hickeys and who, at the time of the trial, was "keeping company" with Julia, testified that Julia did the work around the house and that Mary was unable to do much. He had had several conversations with Mary about her property. She told him she wanted Julia to have everything she owned, because Julia took care of her and nursed her when she needed it, and there wasn't anybody she wanted to have anything but Julia. She said she and Julia had agreed that whichever died first would leave the other everything she had. Mary told him one evening shortly before her death that as soon as she got strong enough she was going up town to make a will.

Anna McDermott, who roomed with the Hickeys, said that Mary was "weak and delicate" and was unable to do housework. She told Mary one day in 1935 that she had just made her will. Mary said she was going to do likewise.

She said she wanted Julia to have all of her estate for taking care of her and waiting on her, and that they had an agreement to that effect. Other witnesses called by plaintiff testified to Mary's poor health and said that Julia did all the work around the house, including caring for Mary. Most of them testified to general statements of Mary that she wanted Julia to have everything she had. The plaintiff admitted on cross-examination that the rents from the farm lands had been divided by giving one-third to Mary Margaret Hickey's guardian, one-third to the children of John Hickey, and one-third to herself. Taxes and expenses were charged the same way.

The defendants called several witnesses who testified as to Mary's state of health from 1921 to her death in 1936. Their testimony showed they had seen her fire the furnace, carry out ashes, clean wall paper, do the laundry and help with the cooking, but some of them admitted on cross-examination that she was frail and delicate. Some of them stated she attended church, went to a grocery store twice a week until about a year before her death, drove to the Century of Progress in Chicago, and attended her brother's funeral in Terre Haute. The preponderance of the testimony shows that Mary was not strong, especially in the later years of her life. Josephine Hickey, a sister-in-law of plaintiff, testified that immediately after Mary's funeral she asked plaintiff if there was a will. Julia told her there was none, and Josephine scolded her for not having Mary execute a will as she had urged. Julia told her that she would not ask her sister to make a will. Julia testified that in this conversation Josephine told her that she was entitled to all of Mary's estate. Anna Hickey, another sister-in-law, testified that Julia made no mention of any agreement at the time they consulted an attorney about taking out letters of administration on Mary's estate. Both sisters-in-law testified about the division made of rents, and expenses on the basis of one-third to each heir or group of heirs, but Jose-

phine admitted Julia had never done anything after September 30, 1936, to cause her to think she had abandoned the claim to all of Mary's estate. Julia had asserted such a claim for the first time on the date last named.

Appellants are correct when they say that this court held in *Edwards* v. *Brown,* 308 Ill. 350, 354, that the value of the property to be conveyed should be alleged in a complaint like that before us. However, in the absence of an answer that alleged that Mary Hickey was overreached or that she was taken advantage of in some inequitable way, the law presumes that the consideration fixed by the parties was an adequate and reasonable consideration. If the parties, without fraud, came to an agreement as to the consideration, mere inadequacy would not be sufficient to prevent specific performance. (*Ullsperger* v. *Meyer,* 217 Ill. 262.) Here, the value of the property was alleged and the answers did not charge fraud or overreaching. Under these circumstances proof of the value of the property on July 3, 1928, was not required to be made.

The decisive question in this case is whether the contract alleged to have been made by Mary Hickey with her sister Julia was proved and whether there was proof of its specific terms. As pointed out the contract alleged was that Mary Hickey would devise and bequeath to Julia all the property Mary owned on July 3, 1928, which was then worth $10,000, if Julia would take care of Mary and do all things necessary to make a home for her in the residence they occupied and would nurse and take care of Mary in her illness.

It is the duty of courts of chancery to scrutinize with scrupulous care the evidence offered to prove an oral contract to make a different disposition of the property of a decedent, from that prescribed by the laws of descent. (*Anderson* v. *Augustana College,* 300 Ill. 72.) To justify a decree for specific performance, the proof of such contract to convey or devise real estate, must be clear and conclusive

and all doubt must be removed, not only that a contract was made but also as to what were its terms. *Anderson* v. *Augustana College, supra; Mould* v. *Rohm,* 274 Ill. 547; *Reynolds* v. *Wetzler,* 254 id. 607; *Fierke* v. *Elgin City Banking Co.* 366 id. 66.

Julia Hickey did not sustain the burden of proof which was hers to establish the existence of the contract she alleged. The proof she offered tended more to establish an agreement that if Julia would make a will leaving all her property to Mary and would take care of Mary, Mary would make a reciprocal will in favor of Julia covering all the property Mary owned at her death. As to terms, the proof tends to show only that Julia was to "take care of" Mary but there is no proof that Julia promised to make a home for Mary or to nurse her during her illness. This proof does not conform to the allegations of the complaint and there is not sufficient proof of what were the specific terms of the contract if one was made. There is no doubt from the testimony that Julia did practically all the household duties and did nurse and care for her sister when she was ill, but even the testimony of the single witness, Hannon Lee Rice, as to the conversation had between Mary and Julia about July 3, 1928, tends to show that each sister was to make a will devising and bequeathing all her property to the other, and that Mary wanted to give her property to Julia because Julia had taken care of her.

Appellants contend that the existence of a contract and the terms thereof cannot be proved by the mere declarations of Mary Hickey made to third persons. Hannon Lee Rice testified he heard the two sisters' conversation just referred to, but the existence and terms of an oral contract to convey or devise lands may be proved by circumstances, acts of the parties, and their declarations, not made in the presence of each other, but not by declarations or acts of one party not binding on the other. *Mayo* v. *Mayo,* 302 Ill. 584; *Fletcher* v. *Osborn,* 282 id. 143; *Willis* v. *Zorger,* 258 id. 574.

The circumstance is entitled to consideration that Julia Hickey paid taxes, distributed and received rents from the farm lands in Iowa and Illinois on the basis that she owned but an undivided one-third thereof. Such circumstance, although material, is not a bar to an asserted right to specific performance. *Aldrich* v. *Aldrich,* 287 Ill. 213; *Fletcher* v. *Osborn, supra,* and *Anderson* v. *Manners,* 243 Ill. 405.

The appellants are correct in their contention that the testimony failed to show just what personal property and real estate Mary Hickey owned in 1928, and that much of the proof tended to show that she wanted Julia to have what she owned at the time of her death. The allegation was that she promised to devise what she owned on July 3, 1928.

Since the decree of the circuit court must be reversed, we need not consider the point raised by appellants that one of the defendants was a non-resident and was served by publication, did not enter her appearance, and yet the decree ordered that her interest in Mary Hickey's undivided one-fourth interest in the 160-acre Iowa farm should be conveyed to the plaintiff.

The appellee relies on such cases as *Mayo* v. *Mayo, supra, Aldrich* v. *Aldrich, supra,* and *Willis* v. *Zorger, supra,* in which specific performance of oral contracts to convey or devise lands was ordered. Those cases differ in the allegations and proof from the case at bar and are not in point.

For the reasons stated above the decree of the circuit court is reversed and this cause is remanded, with directions to dismiss for want of equity the amended complaint, as amended.

*Reversed and remanded, with directions.*