(No. 31382.

CLARA WEIDLER, Appellee, *vs.* LOUIS SEIBERT *et al,* Appellants.

*Opinion filed March 22, 1950.*

478

Lindauer, Lindauer & Pessin, of Belleville, for appellants.

Herbert F. Lill, and P. C. Otwell, both of Belleville, for appellee.

Mr. Justice Gunn delivered the opinion of the court:

Clara Weidler, appellee, filed her complaint in the circuit court of St. Clair County for the specific performance of an oral agreement made between her and Peter Gutwein, in his lifetime, whereby it is alleged he agreed to devise to her by will a certain residence property described in the complaint, provided that she would render certain services to him during his life. The defendants and appellants are the devisees and the executor of the last will and testament of the said Gutwein. An answer was filed denying the agreement alleged in the complaint, and a reply was made thereto, and the cause referred to a master in chancery, who found and reported that the plaintiff had proved her case by clear and convincing evidence. The report was approved by the court, and a decree was entered ordering the defendants to convey the property in question to the plaintiff. A freehold is involved, which gives this court jurisdiction on direct appeal.

The complaint alleges that in August, 1936, Peter Gutwein, whose wife had recently died, proposed to the plaintiff that if she would move into his home, keep the house,

and take care of him, she would receive the dwelling house after his death, and that thereupon it was agreed orally between the plaintiff and the said Gutwein that she would move into the said house, would furnish his board, washing and ironing, mending and other like services as long as he lived, in consideration of which the said dwelling was to be willed to the plaintiff upon his death; and that she did move into the said house with her family in August, 1936, and lived there continuously until the death of Peter Gutwein in June, 1947; that during all of said time Gutwein lived in the house with her and her family; that he was particular as to the food he ate, and as to the time it was served, and it was necessary for him to be served with food not demanded or required by her own family, and that meals were served at a time convenient for him and not for her, and that he would not stay alone at home, and demanded of plaintiff that she, or some member of her family, stay at all times with him; and that prior to moving in with him she had been employed at $50 per month, but was required by the said Gutwein to discontinue that employment and stay with him, and that during all of that time, from 1936 until 1947, she rendered and performed such services, and furnished all of the food, except occasionally he would bring in some potatoes from a farm he owned nearby in the county; that when he died he left a last will and testament, but failed to perform and carry out his agreement with the plaintiff, but on the contrary recited in his will that he had a contract with the plaintiff, who was to receive his household furniture, in addition to the use of the home for the services rendered, and that she should continue to occupy it after his death for one year rent free.

The complaint further alleges that she and her husband made valuable improvements and extensive repairs to the premises during the time they lived therein. The answer of the defendants in substance denied the making of the

agreement, and also made the special affirmative defense that the contract, if made, was oral, and that there was no memorandum in writing, signed by the parties to be bound, to which a reply was filed, saying that the contract was fully performed upon the part of the plaintiff, and that she could not be adequately compensated in an action at law.

A number of witnesses testified, three of them being children of the plaintiff, but it appears without any doubt whatever that for eleven years the deceased lived in the family of the plaintiff; that the proposal to so live there was made by the deceased; that he had known the family from the time they were children, and one of the witnesses testified that she knew the plaintiff, and that Mrs. Weidler had prepared the meals, furnished the food, took care of the house, including his room, did his washing and mending, and put up with his peculiarities, and that the deceased was a large man, seldom smiled, was pessimistic, and always critical; that she lived with the household for seven years, and that on two or three occasions Gutwein bought a hundred pound sack of flour; that when the potatoes were harvested he would sort them, and "sell the large potatoes and store the small ones in our house for our use;" that after he had received an injury he was "shaky," and would have to have some one of the family take his arm and steady him, and carry his chair, and that whenever the plaintiff did go outside to do a day's work he would complain, and say that a woman's place was at home; and that "he had things for breakfast that the rest of us did not have."

A number of other witnesses testified to substantially the same, and yet others to admissions and statements made by the deceased, in which he referred to changes made in the premises, and said Harry (plaintiff's husband) had done that, but it was his, and "I do not care about it." A number of other admissions were made, which clearly indicated arrangements of some sort had been made between

the plaintiff and the deceased, whereby he was going to "make the property over to her."

The evidence upon the part of the defendants consists almost entirely of declarations made by the deceased, out of the presence of the plaintiff or her family, to the effect that he had renters in his house, and that he was the boss, and that he furnished what was right, and paid the telephone and light bill and supplied the potatoes. These declarations of the testator, together with the provision in the will, are relied upon by appellants as a defense to the claims of the appellee.

The parties do not seem to have much dispute about the law applicable to a case of this character. We agree with appellants that it has repeatedly been held that where an oral contract to convey or devise real estate is claimed, the evidence must be clear and convincing, and that it should be scrutinized carefully by the court, if it appears to be contrary to the provisions of a will; (*Hickey* v. *Hickey,* 374 Ill. 614; *Garren* v. *Shook,* 306 Ill. 154) that evidence establishing the contract must be sufficiently definite to show the property involved, and the promise upon which the conveyance or devise was to be made. (*Adkins* v. *Adkins,* 332 Ill. 422.) And, where an oral contract to devise property appears to be out of harmony and inconsistent with the will subsequently made by the promisor, the will may be taken into consideration as bearing upon the improbability of the contract having been made, as alleged. (*Fierke* v. *Elgin City Banking Co.* 366 Ill. 66.) But, while we agree with appellants that we have so held with respect to the law applying to an oral contract to devise by will, we have also definitely held that where an oral contract between a promisor and promisee for a conveyance or devise of property in consideration of support and care is specific, and is fully performed, it will be enforced by specific performance. (*Holmes* v. *Ackley,* 400 Ill. 372; *Anson* v. *Haywood,* 397 Ill. 370; *Dalby* v. *Maxfield,* 244 Ill. 214.) Direct proof of the acceptance of the contract is not essential. (*Willis*

v. *Zorger,* 258 Ill. 574; *Fleming* v. *Dillon,* 370 Ill. 325.) And where a promisor makes a will disposing of the property involved in a manner other than promised, it will be considered but does not prevent enforcement of the contract. (*Chambers* v. *Appel,* 392 Ill. 294.) And statements made by the promisor to third parties, out of the presence of the promisee, contrary to the alleged contract, after a substantial performance of the contract, will not be allowed to avoid it. *Anson* v. *Haywood,* 397 Ill. 370; *Chambers* v. *Appel,* 392 Ill. 294.

In the present case, there was ample evidence to establish a contract in conformity with these rules. The property is now said to be worth about $5000. Obviously, fourteen years ago it was of less value. The plaintiff made a life arrangement to take care of a man then sixty-five years of age. She furnished him room, food and care, did his washing, ironing and mending, and submitted to his peculiarities and exactions for eleven years. The deceased furnished the house, and occasionally some extra food, but that was not a part of the contract, but a freewill offering. The arrangement is established, it is true, largely by members of the plaintiff's family, but evidence of this kind always comes from those in immediate contact with the interested parties.

The evidence clearly discloses that the plaintiff rendered faithful services; denied herself an opportunity to go out to entertainment, or to take outside work, and fully performed an arrangement which, had it been measured by a daily wage, would have, in the aggregate, amounted to more than the value of the premises as of today.

We are of the opinion that the deceased made a good bargain. The plaintiff could not be adequately compensated by an action at law because recovery for a large portion of the work or substance furnished would be barred by the Statute of Limitations, and we have generally held that equity will decree specific performance in such cases

if the promisee cannot be adequately compensated. *Dalby* v. *Maxfield,* 244 Ill. 214; *Gladville* v. *McDole,* 247 Ill. 34.

The evidence offered by the plaintiff in the case before us is clear and convincing, and establishes that an oral agreement was undoubtedly made. The evidence offered by the defendants does not rebut or deny that a contract was made, but, at the best, shows that the deceased had· changed his mind, and perhaps thought he had been too liberal in his proposal. The master in chancery heard the evidence; it was reported to the chancellor, who considered it on exceptions, and when the master's findings of fact are approved by the chancellor they will not be disturbed, unless they are manifestly against the weight of the evidence. (*Chambers* v. *Appel,* 392 Ill. 294; *Osgood* v. *Zieve,* 388 Ill. 226.) In the present case, we think the rule should be applied. And we might further remark that, from a careful examination of the evidence, this appears to be a case that is established by more clear and convincing evidence than is ordinarily presented in cases of this character.

We think the decree of the circuit court of St. Clair County was correct, and it is accordingly affirmed.

*Decree affirmed.*