In re Estate of Stanley Kucharski, deceased—(Helen Kucharski, Claimant-Appellant, *v.* William Block, Executor *et al.*, Defendants-Appellees.)

(No. 55517;

First District—December 1, 1971.

Edward L. Stepnowski, of Chicago, for appellant.

Scariano and Gubbins, of Chicago, (Michael P. Duncan, of counsel,) for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Appellant, Helen Kucharski, on April 15, 1970, filed her second amended claim against the estate of her brother, Stanley Kucharski,

deceased, in the County Department, Probate Division of the circuit court. The nature of the claim was for personal services rendered by her which are generally designated as house duties, cooking, cleaning, decorating, and repair work during the years from 1964 through 1968 at the oral request of her brother and upon his oral promise to give her his house or to take care of her. Claimant set forth that she performed these services for a total of 220 weeks and asserted that the value of her services totalled the sum of $15,400. It was further alleged that she fully performed her part of the contract and claimed all of the net estate pursuant to decedent's promise or in lieu thereof monetary compensation.

The cause was heard by the court without a jury, and the claim was denied. Judgment was entered in favor of the estate, from which this appeal is taken.

In April, 1964, Stanley Kucharski was involved in an automobile accident in which his wife was killed and in which he was severely injured. As a result of these injuries he was hospitalized for a period of about two weeks. After his discharge from the hospital he returned to work as a guard, and his sister, Helen Kucharski, began rendering housekeeping services to him in his home. Six months after the accident he executed a will in which he bequeathed the bulk of his estate in trust to Randy Block, his grandson. Four years later, in 1968 he executed another will which again left the main portion of the estate in trust to his grandson. During the period from 1964 to 1968 he was hospitalized on a number of occasions because of problems relating to diabetes and high blood pressure. In spite of these physical problems he continued working except for periods of hospitalization until the end of 1966. On December 18, 1967, his right leg was amputated above the knee. Shortly before his death in 1968 he contracted for the sale of his home at 6231 South Narragansett Aveune in Chicago, Illinois.

Ann Bartell, one of Stanley Kucharski's sisters, testified on behalf of the claimant and stated that she visited her brother every day while he was in the hospital after the accident in 1964. She related that after Stanley learned of his wife's death, he said, "I have got to have somebody staying with me." Later while she and her sisters, Helen Kucharski and Irene Kulakowski, were present, he asked Helen to come and take care of him after he left the hospital and she agreed. Ann then told her brother, "You know, Stan, you can't ask people to do you favors for nothing," and he replied, "I know, that if anything happens to me, she [Helen] can have the house.

Ann Bartell further testified that during the years 1964 to 1968 she was frequently a guest in her brother's home and that Helen attended to her brother's medical requirements and that at the same time she

maintained the house and did all of the household chores such as cooking, cleaning, and laundering. After her brother's leg was amputated, she noted on her visits that he was often in a wheel chair and that a nurse frequently came to the house.

On cross-examination she testified that Helen was employed full time from 1964 through 1967 and that her sister always maintained her own apartment even though she stayed many nights at Stanley's home. When asked the nature of his sister's claim, she replied that her brother had promised to given Helen the house.

Anna Miskinis, a neighbor of Stanley Kucharski, and Irene Kulakowski, another sister of the decedent and the claimant, substantially corroborated the testimony given by Ann Bartell as to the services rendered by Helen to her brother. With reference to the alleged oral contract, Irene stated that while her brother was in the hospital after the accident in 1964, she overheard him promise to give Helen the house if she would come and live with him.

Irene Kulakowski testified on cross-examination that the only time she heard her brother promise to given Helen the house was in April of 1964 when he was hospitalized after the accident. Prior to her brother's death she never discussed with Helen what she expected to receive from her brother's estate. To the best of her knowledge Helen never asked for compensation from her brother, and in fact she refused to accept the payments offered by the decedent for services rendered. She further testified that her brother returned to work after the accident and was employed until the end of 1966 and that although Stanley could not do hard work, he was able to take care of himself during this period. She said in addition that Helen was employed from 1964 through 1967 and that Helen spent week-ends in her own two-room apartment during the decedent's lifetime. Decedent and Helen worked different hours, claimant from 8:45 A.M. to 4:00 P.M., decedent from 3:00 P.M. to 11:30 P.M. She was present in Stanley Kucharski's home in 1964 when the decedent informed Helen that he had executed a will and at that time Helen made no inquiry concerning the contents of the will. She learned at her brother's wake that the decedent had contracted to sell his home prior to his death.

Helen Kucharski alleged in her claim that she performed the enumerated services at the oral request of the decedent and she itemized the services rendered to be of the value of $15,400. Irene Kulakowski's testimony shows that the claimant refused to accept any payment offered by the decedent for her services. In view of this explicit rejection of compensation the trial court properly denied the claim for a specified sum of money.

■■ The claimant and the decedent were brother and sister, and while the claimant did maintain her own apartment she spent much of her time in her brother's household. Where members of a family reside together and some of them render services for others, there is a presumption from the familial relationship that such services were rendered gratuitously without contemplation of wages or other compensation; however, as the appellant points out, this presumption may be overcome by proof of an express or implied contract. (*Dempski v. Dempski*, 27 Ill.2d 69, 187 N.E.2d 734, *Chapman v. Chapman*, 87 Ill.App. 427.) The trial court found that the evidence did not establish the existence of such an express or implied contract, and it denied the claim. The principle question presented on appeal is whether this finding is against the manifest weight of the evidence.

■■ One who seeks to enforce an oral contract for a devise in exchange for personal services, must establish the existence and terms of such a contract by clear, explicit, and convincing evidence, (*Galapeaux v. Orviller*, 4 Ill.2d 442, 123 N.E.2d 321), and the trial court in determining whether to exercise its equitable powers in cases of this type must scrutinize the evidence presented with scrupulous care. *Chambers v. Appel*, 392 Ill. 294, 64 N.E.2d 511.

■■ A claimant may prove the making of a contract and its terms either directly or circumstantially through evidence of the actions and statements of the parties, (*Hickey v. Hickey*, 374 Ill. 614, 30 N.E.2d 423); however, testimony that the decedent made declarations of testamentary intent is not sufficient in itself to establish the existence of an enforceable oral contract. (*Greenwood v. Com. Nat. Bank of Peoria*, 7 Ill.2d 436, 130 N.E.2d 753.) Moreover, while it is true that the existence of a valid will with provisions contrary to the terms of the asserted contract will not deprive a claimant of his right to specific performance once the contract and performance by him has been established by clear and convincing evidence, (*Chambers v. Appel*, 392 Ill. 294, 64 N.E.2d 511), the fact that the decedent disposed of his property by will in a fashion contrary to the terms of the alleged agreement is a factor which must be considered when the trial court weighs and evaluates the evidence introduced in support of the contract. (*Weidler v. Seibert*, 405 Ill. 477, 91 N.E.2d 416.) As stated in *Fierke v. Elgin City Banking Co.*, 366 Ill. 66, 80, 7 N.E.2d 875, 881, "Where an asserted oral contract is out of harmony and inconsistent with a will made by the promisor subsequent to the time when it is alleged that he entered into the contract in question, the will is entitled to be taken into consideration as bearing upon the improbability of the contract having been made as alleged."

■■ In the case at bar, both Ann Bartell and Irene Kulakowski testified that the decedent in April, 1964, promised to give Helen his home if she would come and live with him. Stanley Kucharski's actions subsequent to April, 1964, however, are inconsistent with the assertion that he was under a contractual duty to devise his home to the claimant. Six months after he allegedly promised the house to Helen Kucharski, he executed a will which after making specific bequests provided that the residue of the estate would be given in trust to his grandson, Randy Block. During the time that Helen was providing services, he offered to make payments to her which were refused. Shortly before his death he entered a contract for the sale of his home, and he executed another will which was again out of harmony with the alleged oral contract. The alleged promisor has spoken from his grave not only by the execution of the two wills in which he left the bulk of his estate to his grandson, but also by the sale of his house. Helen Kucharski was living with the decedent when these events occurred, and when she learned that her brother had executed the will in 1964, she made no comment about any agreement. In view of all the evidence relating to the course of conduct followed by the decedent, we cannot say that it was against the manifest weight of the evidence for the trial court to find that an oral contract to devise real estate to claimant was not proven by clear and convicing evidence.

A consideration of all the facts and circumstances impels us to refrain from substituting our judgment for the trial court's finding which is buttressed by the testimony of the witnesses whom he had the benefit of seeing and hearing.

The appellant also contends that it was error to admit into evidence the will of decedent, dated October 22, 1964. We have examined the record and conclude that a sufficient foundation was laid for the document's admission.

The appellees filed a motion to strike certain factual matters appearing in the appellant's brief which were taken with the case. In view of the conclusions reached by us, we find it unnecessary to pass upon the motion.

For the reasons stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

ADESKO, P. J., and DIERINGER, J., concur.