(No. 14527.—Decree affirmed.)

CHARLES W. MAYO *et al.* Appellants, *vs.* MYRTLE MAYO, Appellee.

*Opinion filed April 19, 1922.*

1. DEEDS—*what necessary to take oral promise to convey out of Statute of Frauds.* To take a case of an oral promise to convey land out of the Statute of Frauds it is necessary that the contract be established by competent proof in a definite manner and that the promisee shall have taken such possession under the contract as its terms and the situation of the parties require, and if such is the case the contract will be enforced without proof of exclusive possession.

2. SAME—*what proof necessary to establish an oral contract to convey.* While an oral contract to convey land must be established by clear and satisfactory proof it is not necessary that the contract shall be proved by a third party who heard it made but it may be proved by declarations and conduct of the parties not in the presence of each other, and where the facts, including the acts of the parties, raise a convincing implication that the contract was made, and its terms are sufficient to justify enforcement, it will be upheld.

3. FRAUD—*Statute of Frauds is designed to prevent fraud—oral promise to convey.* The Statute of Frauds is designed to prevent fraud, and it cannot be invoked to prevent the enforcement of an oral promise to convey land in return for services rendered where failure to enforce the contract will amount to a fraud upon the promisee.

4. EVIDENCE—*promisee is not competent, as against promisor's heirs, to testify to oral agreement to convey—reversal.* A party who seeks to have a conveyance made to her in accordance with a promise made in the promisor's lifetime in consideration for services rendered is not a competent witness to prove the contract in a partition suit by the heirs of the promisor, but where there is sufficient competent evidence in the record to sustain the decree for a conveyance it will not be reversed because of the admission of incompetent testimony.

APPEAL from the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding.

STEWART W. KINCAID, for appellants.

F. C. VANSELLAR, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Henry C. Mayo died intestate on March 29, 1920, leaving surviving as his only heirs-at-law his brothers and sisters, Charles W. Mayo, Mary F. Whitehead, John M. Mayo and Sarah S. Mayo, appellants, and David Mayo, also a brother. At the time of his death he was seized in fee of lots 55 and 56 in Brown's Second addition to the town of Kansas, Edgar county, Illinois. The appellants filed their bill for partition, making David Mayo defendant. Later they filed an amended bill, setting forth in addition to the averments of the original bill that Myrtle Mayo, daughter of David Mayo, claimed some interest in the property and denying any such interest in her. Myrtle Mayo was made defendant and filed her answer and also a cross-bill, in which she alleged that in 1902 Henry C. Mayo was the owner of the fee of the described real estate, and that she was a young girl who had her living and her way in the world to make; that Henry C. Mayo, who was her uncle, agreed with and promised her that if she would come and live with him and remain with him until his death he would give to her, as a consideration therefor, everything that he might die possessed of, both real and personal; that she, in pursuance of said agreement with Mayo, did in 1906 go to his home in Kansas, Illinois, from the city of Chicago, where she at that time resided, and did live with and occupy with him the real estate described in the original and cross-bills, until the date of his death; that while so residing with him she earned a part of the living for herself and for him, and that she bought and paid for much of the household furniture used on the premises and paid for a large part of the supplies and food; that Mayo told her frequently that he had made provision for inheritance by her of his real and personal property because of their agreement, but that since his death she has been unable to find any will or deed by which a conveyance was made;

that since his death she has continued in possession of said premises and is the owner thereof in fee; that no adequate compensation can be obtained from the estate of Mayo for her services except by requiring the real estate to be conveyed to her. These averments are all denied by complainants in the original bill, and their answer also sets up the Statute of Frauds as a defense. The cause was referred to the master, who found the issues for the complainants in the original bill and against the complainant in the cross-bill. Upon a hearing by the chancellor on exceptions to the master's report the same were sustained, and the chancellor found the issues for the cross-complainant, dismissed the original bill for partition for want of equity, and ordered that the master in chancery execute a deed of the premises to the cross-complainant.

The principal question involved in the case is whether or not a parol contract to convey property has been proven with that degree of certainty which takes it out of the operation of the Statute of Frauds. The rule is, that to take a case of oral contract to convey land out of the Statute of Frauds it is necessary that the contract to convey should be established by competent proof in a clear and definite manner, and that the promisee shall have taken such possession under the contract as the terms of the contract and the situation of the parties require. Where such clear proof of the contract is made and it is shown that the promisee has taken such possession courts of equity will enforce such a contract without proof of exclusive possession. (*Dalby v. Maxfield,* 244 Ill. 214; *Warren v. Warren,* 105 id. 568.) The rule also is, that while an oral contract to convey land must be established by clear and satisfactory proof, it is not necessary that the contract shall be proved by a third party who heard it made but it may be proved by declarations and conduct of the parties not in the presence of each other. *Fletcher v. Osborn,* 282 Ill. 143; *Kane v. Hudson,* 273 id. 350; *Lonergan v. Daily,* 266 id. 189; *Christensen v. Chris-*

*tensen,* 265 id. 170; *Willis* v. *Zorger,* 258 id. 574; *Glad-ville* v. *McDole,* 247 id. 34; *Dalby* v. *Maxfield, supra; Daly* v. *Kohn,* 234 Ill. 259; *Watson* v. *Watson,* 225 id. 412; *Standard* v. *Standard,* 223 id. 255; *Geer* v. *Goudy,* 174 id. 514.

The evidence shows that Henry C. Mayo, known throughout this record as Clay Mayo, was the owner of the property in question in Kansas, Illinois. He was a bachelor, living with an unmarried sister, Harriet. In 1906 appellee came to live with him. She had been in Chicago with an aunt, Sarah Mayo, for a period of six years, where it appears she had assisted in the housework and attended school at the Hyde Park high school, and also attended Northwestern University for a period of six months, caring for the children of a minister at Winnetka during that time. She returned to Kansas at the request of Mayo and resided with him and his sister, Harriet, until the death of the latter, in 1909. Thereafter she continued to reside with Mayo until the time of his death, in 1920. It appears that she taught school for several years in and near the village of Kansas; that during this time she did the housework for her uncle and later took up sewing as a means of livelihood; that at times she was away from his house, but that it was with his consent and for the purpose of making a livelihood when he was out of work, and that when away she sent food to him and came home each week-end. The record also shows that she bought furnishings for the home and furnished a part of the provisions used there; that during the last five or six weeks of the life of Mayo she with his consent went to Paris, Illinois, to work, apparently by reason of sewing being more plentiful there; that while she was in Paris she sent boxes of food and went home each week-end to take care of the house. Numerous witnesses testified to statements made by Mayo after he became sole owner of the premises that he had agreed with appellee that if she would come and keep house for him she

should have his property at his death. The record shows that on one occasion he refused to sell the house to Cyrus Evans because he had promised appellee he would give her the house if she would come and stay with him. The testimony to the effect that he had promised appellee that if she stayed with him and took care of him he would give her what he had when he was through with it was given by the witnesses W. G. Smith, Sam Dyer, Frank Poulton, Dr. McKnight, David Mayo and Al Bowman. The evidence shows, also, that at one time appellee received an offer to go to Iowa to teach, at $140 per month, but that at her uncle's request she declined to go; also that she had an opportunity to take up hospital training and become a practical nurse, but that she declined this because it would keep her away from home at night. The statements made by Mayo during his lifetime show unquestionably that he understood, and that appellee understood, that she was to remain with him and take care of him and the place and that the property should be hers upon his death.

Appellants offered in evidence a letter written by appellee indicating that she was preparing to leave her uncle. The letter also indicates that the uncle was at times surly and that in the later years of his life he was more or less difficult to live with, but the record shows that appellee did not leave, although she wrote in the letter that she was prepared to do so. Appellants also offered the testimony of witnesses to the effect that she went to Chicago to see her uncle Charles Mayo in order to secure the appointment of a certain person as administrator of the estate of Clay Mayo, and that she did not say anything at that time about owning this property but spoke of Charles' interest in it. Appellee testified concerning this conversation that she told her uncle Charles that she had been informed by counsel that while her uncle had promised to give her the place he had not made a deed to that effect, and that it would be necessary to appoint an administrator for the estate. She de-

nied, however, that she said to him, as he testified, that it was necessary, in order to protect his and her father's interest in the property, that the right sort of an administrator should be appointed. In this testimony she is corroborated by Jean Rives, who went with her.

Appellee was not competent as a witness to prove the contract but we are of the opinion that the record amply shows the existence of such, and that it shows performance on her part, coupled with such possession of the premises as the circumstances of the parties required. The record shows that she spent fifteen years in caring for her uncle and for his sister Harriet during her lifetime, and it is evident that he paid her nothing for her services, but, on the other hand, that she contributed not only to the up-keep of the house but to his support during times that he was out of employment. The record shows that she sent boxes of food to him while she was away during the week, sewing in Paris. Under the Statute of Limitations relating to claims she could not recover for services for a period of more than five years on a claim against the estate. Where the facts, including the acts of the parties, raise a convincing implication that the contract was made and that its terms and provisions are sufficient to justify its enforcement the contract will be upheld. (*Aldrich* v. *Aldrich,* 287 Ill. 213.) The Statute of Frauds pleaded in this case is designed to prevent fraud but not to prevent the exercise of equitable jurisdiction by a court of equity for the enforcement of an oral contract, where failure to do so would amount to a fraud upon such promisee. (*Gladville* v. *McDole, supra.*) We are of the opinion that the record in this case establishes such contract and its performance, and that appellants, who are brothers and sisters of Henry C. Mayo, have no intertest in the property, and that the circuit court was right in so holding.

It is objected that certain testimony offered in the record is incompetent. There is sufficient competent evidence

in the record to sustain the averments of the cross-bill.   It therefore does not become necessary to pass upon whether or not the evidence objected to was competent.

We are of the opinion that the court did not err in dismissing the original bill for partition and in decreeing the relief prayed in the cross-bill.   The decree of the circuit court will therefore be affirmed.          *Decree affirmed.*