In re Estate of Michael T. Burke, Deceased.

Frances Burke, Appellee, v. Estate of Michael T. Burke, Deceased, H. S. Capron, Executor, and William F. Burke and Margaret Burke, Appellants.

Gen. No. 9,198.

Heard in this court
at the October term, 1939. Affirmed. Opinion filed January 15, 1940.

GREEN & PALMER, of Urbana, and SCHAEFER & DOLAN, of Champaign, for certain appellants.

WALTER B. RILEY and CHARLES E. KELLER, both of Champaign, for certain other appellant; HENRY I. GREEN and ORIS BARTH, both of Urbana, of counsel.

DOBBINS, DOBBINS & THOMAS, of Champaign, for appellee.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Champaign county, Illinois, allowing a claim of Frances Burke against the estate of Michael T. Burke, deceased, in the sum of $11,037.15 and costs of suit, rendered on the verdict of a jury.

The claim, as originally filed on August 7, 1936, sought damages for an alleged failure to discharge a mortgage lien and indebtedness on certain real estate owned by the claimant and originally deeded to her by direction of Michael T. Burke, her deceased uncle, in accordance with the terms of an alleged oral contract entered into between said parties on or about September 1, 1931, and in the alternative, claimant sought the allowance of the same amount alleged to be due for services rendered and moneys expended for management of the farms and property and upkeep of the decedent's household at his request during the five years preceding his death.

The claimant, Frances Burke, who was employed in a music store in Champaign, Illinois, left her employment and went to live with her uncle on his 200 acre farm near Savoy, Illinois. His mother, who had lived with him, had departed this life and he was then a bachelor aged 70 years. Frances Burke remained with and kept house for him, did his cooking, general housework, laundry and much of the work on the farm until the time of his death on July 18, 1935, including care and services of an unpleasant and onerous nature.

Michael T. Burke had executed a will in 1928, which was duly admitted to probate in the county court of Champaign county after his death in 1935. In this will, he had devised his lands as follows: The above-mentioned 200 acres to his brother, William F. Burke and Margaret Burke, his wife, for life and thereafter in fee simple to their bodily heirs *per stirpes*. He so devised another 160 acre farm to his brother, Harry W. Burke, and Molly Burke, his wife, for life and thereafter in fee simple to their bodily heirs *per*

*stirpes.* The residue of his estate was devised and bequeathed to his said brothers as their absolute property. The 200 acre farm was held subject to a $10,000 mortgage lien and the 160 acre farm to a mortgage lien of $1,500. Oral testimony indicated the market value of the 200 acre farm to be about $150 per acre and of the 160 acre farm to be about $140 per acre. Personal estate was listed in the inventory and appraisement bills at a gross value of $6,459.28, in which was included a real estate mortgage due from William to Michael in the amount of $3,883. Claims, including funeral expenses, were filed against the estate aggregating approximately $900 aside from the costs of administration and appellee's claim in suit herein.

After his niece Frances had gone to live with him, Michael T. Burke and his brother, William Burke, her father, made an adjustment and settlement of a prior indebtedness somewhat in excess of $17,000 owing from William to Michael. In this settlement, by direction of Michael, William and his wife executed a deed, which was duly recorded, conveying to said Frances Burke 93.42 acres of farm land in Champaign county, subject to a pre-existing mortgage lien against the same of $10,777.59, which had been given by William and his wife to the Dighton-Dilatush Loan Company and by them assigned to the Equitable Life Assurance Society. In this settlement the above land was valued at $14,013, and the inventoried mortgage of $3,883 was given by William to Michael on other land to settle the balance of his said indebtedness.

The original verified claim filed by Frances Burke purported to be for "amount due claimant because of failure of decedent to discharge the mortgage indebtedness against claimant's land, in accordance with an agreement of decedent and claimant, in consideration of which agreement claimant paid out moneys and rendered the services mentioned below . . . $11,037.15." Then followed items of $5,000 alleged to have been ex-

pended and of $6,000 for personal services rendered. Subsequently, on motion for a bill of particulars by the executor and those of the heirs and devisees who opposed the claim, a bill of particulars was filed on February 15, 1938, and later amended concerning said alleged agreement to discharge the mortgage indebtedness, by adding and including in said statement that the agreement of decedent and claimant was "made orally on or about the 1st day of September, A. D. 1931, whereby the said Michael T. Burke undertook and agreed with the claimant that if she, the said claimant, would remain or stay with him, he, the said Michael T. Burke, would pay off the mortgage indebtedness against certain premises then lately conveyed at his instance to the claimant subject to a certain mortgage indebtedness, which agreement was fully kept and performed by the claimant, but in the performance of which agreement the decedent made default by failing to pay a large portion of the amount agreed by him to be so paid, namely, the sum of $11,037.15." Therewith there was added the claim of $6,000 for personal services rendered, which latter demand for $6,000 was thereafter withdrawn by the claimant.

The cause was tried by a jury in the county court and judgment was entered for the claimant in the amount of $10,572.80, and upon appeal therefrom to the circuit court of said county by the executor and certain of the devisees, the cause was retried by a jury and the judgment on the verdict for $11,037.15 and costs was entered. Motion for new trial was denied and William F. Burke and Margaret Burke, parents of Frances Burke, have appealed to this court.

Appellants insist that the judgment is contrary to the manifest weight of the evidence; that no contract was proven; that the court erred in giving and refusing certain instructions offered to the jury by the respective parties, and that the amended claim stated a new

cause of action and was barred by the statute of limitations.

The claimant appellee contends, on the contrary, that the judgment and verdict were in accord with the greater weight of the evidence; that the oral contract was clearly and conclusively proven by direct and circumstantial evidence, and that the claim, as amended and set forth in the bill of particulars, merely amplified and clarified the statement of the agreement of the deceased to pay the mortgage indebtedness in consideration of her remaining with him on the farm and performing such care and services, to which she had assented and so continued to do until his death, in full compliance with the terms of said oral contract.

A number of witnesses testified on behalf of the claimant, who were disinterested in the result of her suit, the substance of whose testimony concerning the alleged oral contract between Frances Burke and Michael T. Burke was as follows: Mrs. James Doyle testified that in September or October, 1931, she was present when a conversation occurred between Michael T. Burke, the decedent, and the claimant; that in this conversation, Michael stated that he had bought Frances Burke a farm and she stated that there was a bigger mortgage than the place was worth, and that the decedent then stated that he would pay it off, as he had always paid his debts, if the claimant would stay, and she stated that she would stay with him. Witness L. T. Brownfield, a farm machine dealer in Champaign, testified that he had known Michael Burke for about 35 years, and knew that the deed in question had been made; that Michael told him that he intended to pay off the mortgage on the farm that belonged to Frances and in this conversation also stated that he had agreed to pay the loan and she had agreed to stay with him during his lifetime for the farm. W. L. Goldsby, engaged in the farm insurance business in Champaign, had known the decedent for 20 years and

wrote his insurance during all of that time and was called by Mr. Burke to his place in 1931 for the purpose of insuring the buildings on the farm deeded to the claimant. In his conversation with the decedent, he was told that the insurance was to be written in the claimant's name and he then inquired of Mr. Burke as to whether or not there was any mortgage on the farm. He was told by the decedent that there was a mortgage, but that he expected to pay it off soon. He remembered this particular conversation because it was the only instance in his experience where information was volunteered that a mortgage was to be paid by someone other than the owner of the property. J. B. Hanley testified that the decedent told him in the presence of the claimant that he agreed to pay off her mortgage and that he did not know whether or not she had made any reply. A similar statement was testified to by witness John Busey. He had remarked to the decedent that he was fortunate to have such a girl to keep house for him, to which the decedent replied that she was making him a good home; that he had bought some ground which he was going to give her, or had given her, and that there was a mortgage on the place which he expected to pay. Evidence was also offered of the fact, and it is conceded, that decedent had made some payments on this mortgage.

The appellant offered the testimony of a number of witnesses tending to prove that the decedent was a conservative, honest and industrious person whose word could be thoroughly depended upon and who met all of his obligations.

Further testimony was offered by the appellant with reference to conversations and statements which the claimant had made to various persons and the testimony of J. W. Watson, who had charge of the farm loan business of the Equitable Life Assurance Society, is particularly stressed. The mortgage on the premises was to run $35\frac{1}{2}$ years, maturing September 1, 1961.

Semiannual payments amounting to $359.38 are due annually. It appears from his testimony that these payments were in default in March, 1932, and at later dates. He testified all of the instalments were paid by the claimant. When the mortgage went into default, the claimant was notified by mail. She would then call on Mr. Watson and discuss the mortgage. He stated that he had no personal recollection of the conversations, but had made memorandums at the time as to what the conversations were; that he could refer to the memorandum and after refreshing his recollection, could recall the substance of what was said. The witness testified as to various conversations which he had as to the manner by which the claimant expected to obtain money with which to pay the instalments due on the mortgage. His testimony was to the effect that on February 3, 1936, claimant said she expected to obtain a settlement from her uncle's estate. At that time he made a memorandum to the effect that the claimant stated she thought she could get $5,000 from the settlement on the date of that conversation. Claimant had an entirely different version of this conversation with Mr. Watson. She stated that she then told him that her attorneys had advised her that they thought the estate would be willing to settle for $5,000, and that her uncle had promised to pay off the mortgage on the farm if she stayed during his life. Mr. Watson stated that his purpose in making a memorandum was to preserve a record as to when and how payments would be made on the mortgage in question. He repeatedly stated that he had no independent recollection of what was said in the conversation without referring to his memorandum. Josephine Mayer and Sadie Jordan, daughters of the appellants and sisters of the claimant, together with Grant Jordan, the latter's husband, testified to a conversation in the presence of her mother, in which the claimant stated that she did not expect her Uncle Mike to pay off the mortgage and that if she

had the right kind of crops and proper management, the place would finance itself. Claimant denied that she had made these statements.

Two juries have passed on this matter and found in favor of the claimant. The law is well settled that an express contract may be proved, not only by direct evidence of an actual agreement and the express words used by the parties, but also by circumstantial evidence. *Heffron v. Brown,* 155 Ill. 322, 40 N. E. 583; *Aldrich v. Aldrich,* 287 Ill. 213, 122 N. E. 472; *Mayo v. Mayo,* 302 Ill. 584, 135 N. E. 90. Whether there was or was not a contract was a question for the jury to determine, and in our opinion there was sufficient evidence for the jury to determine that there was an express contract between the claimant and the decedent, which was the basis for this action as set forth in the claimant's amended claim. Where the facts, including the acts of the parties, raise a convincing implication that the contract was actually made, and satisfies the court that its terms and provisions are sufficient to justify its enforcement, it should be upheld. *Aldrich v. Aldrich, supra.* Here there was direct and positive testimony of disinterested witnesses that the decedent had stated to the claimant that the mortgage in question would be paid by him as he had agreed; of her assent in express words, as stated by Mrs. James Doyle, and evidenced by the declarations, acts and conduct of the parties to the contract. *Johnson v. Devine,* 192 Ill. App. 453.

Appellants' counsel, in support of their position, rely strongly upon the case of *Moreen v. Estate of Carlson,* 365 Ill. 482, 6 N. E. (2d) 871, wherein the verdicts of two juries and the finding of the Appellate Court were against the claimant on issues of fact and to the effect that no contract was proven and that the oral contract declared upon had not been established by the evidence. Here in direct contrast thereto, the verdicts and judgments in both trial courts and the finding of this court

is in favor of the claimant on the issues of fact. Without commenting thereon, a reading of that case will readily disclose the controlling distinctions between the facts and principles therein announced and in the case at bar.

Appellants' counsel question the right of the claimant to amend her claim after the expiration of one year from the date of filing the same, contending that said amendment set forth a new cause of action which was thereby barred by the limiting provisions of the statute. No such point was raised in the pleadings, motion for new trial nor in the assignment of errors in the appellants' brief herein, and the same is deemed to have been waived and cannot now be raised for the first time in this court. *Holmes v. City of Chicago,* 203 Ill. App. 445; *Palmer v. Frank,* 169 Ill. 90, 93, 48 N. E. 426. Moreover, the claim recovered upon, as originally filed and amended, is based upon the same transaction and agreement of the parties. The amended claim sets out more completely and specifically the terms of the alleged contract, but is the same transaction that is set out in the original claim. We hold that it does not state a different cause of action.

Certain other alleged errors are assigned in the admission of evidence and the rulings of the court thereon, which we deem in most instances to be without force, and we find no harmful or prejudicial error therein.

Appellants complain of the refusal of the trial court to give defendants' refused Instructions Nos. 1 and 2. Instruction No. 1 was not based on the pleadings in this case. The sole question for the jury to determine was whether or not there was a contract between the parties; if there was, the amount due under the contract. This instruction is not based on the pleadings or the evidence. Refused Instruction No. 2 is subject to the same criticism as Instruction No. 1. This instruction told the jury "that if the evidence

regarding the alleged contract between Michael T. Burke and Frances Burke was so conflicting or uncertain that they were unable to arrive at the exact terms of the alleged contract, then they were entitled to consider the fact that the claimant had rendered service to Michael T. Burke and the value of said services, if any, was shown by the evidence, and that they were further entitled to consider the fact that Michael T. Burke had the farm in question deeded to Frances Burke and that he furnished her a home, and any other compensation or remuneration the evidence showed he allowed.'' Prior to the examination of any witnesses, the second portion of the claimant's claim for services on a *quantum meruit* basis was waived and the claimant rested her claim upon the first portion of the claim, being for the amount due for failure to pay off the mortgage indebtedness in accordance with the agreement set forth in the claim. Consequently, refused Instruction No. 2 attempted to instruct the jury on an issue not raised by the pleading or the evidence and was properly refused.

It is further contended that error was committed by the trial court in giving Instructions Nos. 6, 10 and 13 on behalf of claimant. It is argued that Instruction No. 6 permits a recovery regardless of what the obligations were to be and whether or not they were performed by the claimant and regardless of the terms of the contract. This is not a fair construction of the meaning of this instruction. Instruction No. 6 told the jury that if they believed from a preponderance of the evidence that the claimant and the decedent made an oral agreement whereby the claimant agreed that she would remain and stay with him, and that in such agreement the decedent promised that he would pay off the mortgage indebtedness against certain premises then lately conveyed at his instance to the claimant, and that if such agreement was fairly and understandingly entered into by the parties, then the claimant and the

estate of the decedent were each bound thereby. The court did not intimate by this instruction that either of the parties had fulfilled his or her part of the agreement, and it is not subject to criticism that it permitted a recovery regardless of what obligations were performed by the claimant and regardless of the terms of the contract. The jury was repeatedly told by instructions given by the appellant that the claimant could not recover unless she proved that a contract was entered into between the claimant and Michael T. Burke and unless she performed her part of the contract.

All elements necessary for a recovery on the part of the claimant are incorporated in Instruction No. 10 and there was no error in giving this instruction. By claimant's Instruction No. 13, the jury was told that if they found from a preponderance of the evidence and under the instructions of the court that if the claimant stayed with the decedent until his death, in performance of an agreement between the claimant and decedent that if she did so the decedent would pay a certain mortgage, then upon the death of the decedent without having fully paid such mortgage, the claimant was entitled to recover the entire amount remaining unpaid thereon, whether the same was then due by the terms of the mortgage or not. The instruction was based upon the claimant's theory of the case and was proper under the pleadings and the evidence.

As stated therein, the instructions should be considered in a series, and when so considered, we hold that the jury has been fully and fairly instructed upon the issues herein.

While we have not discussed all of the errors assigned, we have examined and considered them, and from a review of the entire record, we find that substantial justice has been done between the parties and that no reversible error appears in the record.

The judgment of the circuit court of Champaign county will therefore be affirmed.

*Judgment affirmed.*